**GENERAL BRONZE CORP. v. CUPPLES PRODUCTS CORP. et al.**
(two cases).
Nos. 14253, 14254.

United States Court of Appeals
Eighth Circuit.
May 17, 1951.

See also, D. C., 9 F.R.D. 269.

Daniel L. Morris, New York City, (Koenig & Pope and Lloyd R. Koenig, St. Louis, Mo., Curtis, Morris & Safford, and Marshall M. Holcombe, New York City, were with him on the brief), for appellant.

Casper W. Ooms, Chicago, Ill. (Thomas S. McPheeters, Marion S. Francis, and Joseph J. Gravely, St. Louis, were with him on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These two cases were consolidated for trial in the district court, and they are presented together here. Both actions are for infringement of combination patents on features of construction of metal windows and for unfair business practices. The trial court entered judgment dismissing both complaints for want of equity, and the plaintiff appeals.

In No. 14,254, plaintiff alleges infringement of claim 4 of patent No. 2,473,298, which is for a combination of sash brake, sash rail and sash frame of metal windows.

In No. 14,253, infringement is charged in this court of 19 claims of seven such patents, No. 23,045, No. 2,077,808, No. 2,084,355, No. 2,084,776, No. 2,257,123, and No. 2,304,063.

The defendants pleaded anticipation and absence of invention over prior patents and publications, prior knowledge, prior use and non-infringement, and denied the charge of unfair business practices.

The court filed an opinion and made findings of fact and conclusions of law covering all the issues in the case. For convenience we shall consider the several patents

in the same order the court did in his findings of fact.

Both the plaintiff and the defendants manufacture and sell windows made of aluminum. The art of metal windows is old. They have been made of various metals such as aluminum and bronze for many years. All the windows manufactured by the parties are called double hung windows, meaning a window having an upper and a lower sash. The metal sides of the sash are called rails or stiles. The top and bottom rails are horizontal and the side rails are vertical. The sashes slide up or down in a metal frame which is enclosed in a wooden frame. The vertical sides of the metal frame in which the window slides up and down are called jambs. The top of the frame is called the header and the bottom is called the sill. The window is held in place by a channel in the jambs in which the vertical rails slide.

Instead of the conventional rope and weight to balance the window and to hold it in the position desired both parties use a coil spring, one end of which is attached to the jamb at the top of the frame and the other end to the vertical rail of the sash. The result is that as the window sash is moved up or down the tension of the spring is increased or diminished so that the sash would not remain fixed in the position desired were it not held there by some means. Plaintiff's patented device (patent No. 2,473,298) and defendants' accused device are intended to overcome this difficulty and to hold the window in any desired position. These devices are referred to as equalizers or brakes.

The complaint alleges that defendants' device infringes claim 4 of patent No. 2,473,298, which claim reads as follows: "4. In a window construction of the type having a frame member including vertical jambs having channels for receiving a slidable sash member, a sash member having horizontal upper and lower rails and vertical side rails which latter are slidably mounted in said channels; the improvement which includes a plate member mounted on the upper side of the upper horizontal rail, a screw attaching said plate member to said rail, an arm carried by said plate member and having slidable contact with a face of the adjacent jamb member, and an adjusting screw operatively associated with said plate for adjusting said arm toward and in contact with said face of said jamb, said screw including a tool-receiving head located outside of the adjacent channel in which said sash member is mounted so as to be freely accessible for engagement by a tool when said sash is mounted in said frame."

The court did not pass upon the validity of this patent but held that claim 4 thereof is not infringed by the defendants' device.

The plaintiff contends that the court erred in so determining, in that (1) it limited claim 4 to the illustrative embodiment of the invention shown in the patent drawing; (2) in failing to hold that defendants' device comes within claim 4 and infringes; and (3) in making Findings and Conclusions.

We agree with the trial court. We fail to see any merit in the plaintiff's contention on this point. The claim is clear when it is observed that by the use of the word "plate" is meant a flat piece of metal. The patented device consists of a "plate" mounted on the top of the upper rail of a sash at the end of the rail near the channel in the jamb. It is bent to form an angle, one leg of which is attached to the rail by a screw near the end thereof farthest from the jamb upon which the plate pivots. The other leg of the plate runs upward in front of the channel in which the window slides. To this leg is attached an arm or brake shoe which fits loosely into the channel. The brake is operated by swinging the plate with the attached arm so that the brake shoe will press against one wall or face of the channel and produce the friction necessary. This adjustment is made by a screw which passes through an ear projecting from the horizontal plate down over the upper rail.

The defendants' device has no "plate" whatever. It is formed almost entirely of one piece of metal which rests on the upper rail of the sash. It comprises a piece of metal in the shape of a U, the arms of which project into the jamb channel and the ends of which engage each wall thereof.

The brake is fastened to the sash rail by a piece of metal through which a screw passes and engages a wedge between the two arms of the U. Turning the screw one way forces the arms apart so that they press against the walls of the channel producing the required friction. Turning the screw in the opposite direction permits the arms to approach each other and releases the brake.

Thus it is clear that no construction, no matter how liberal, of the claim would include defendants' device. It is true both are friction brakes and both use a brake shoe, defined by Webster as "The part of a brake which rubs against a relatively moving part." But the function is not patentable. Plaintiff cites in support of its contention Willis v. Town, 8 Cir., 182 F. 2d 892, 893, where this court said: " * * * 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape' * * * the plaintiffs' device and that of the defendant are identical."

If this rule must be applied as suggested by counsel then plaintiff's patent is invalid. Friction brakes having brake shoes are as old as civilization. If the rule applies in this case only to the way the brake shoe is operated and to the mechanism used to operate the two brakes then the two devices are wholly unlike in the way they accomplish the result.

In the plaintiff's device there is but one brake shoe. In the defendants' there are two. The patented device is operated by a screw which swings the plate and the brake shoe into operation from the screw on which it is pivoted whereas the defendants' device is operated by a floating wedge between arms. In other words, the two devices do not "do the same work in substantially the same way."

It is next contended that claim 1 of reissue patent No. 23,045 and claim 7 of patent No. 2,077,808, called clip patents in the record, are infringed by the defendants in their windows A–100, A–200 and A–500.

The court held that the patents involved are invalid and not infringed.

These patents are directed to a clip for holding panes of glass in a window sash. They are claimed to be useful in windows of all types.

The court stated the problem which the patents were designed to solve as follows: "24. In inserting glass in window sash, or what is commonly called glazing, the problem was originally presented of holding the glass in place in the sash while putty was being applied, and while the putty was drying, and continuing to hold the glass in the sash in the event that the putty cracked loose when it became old. There are many patents on the subject of the various clip designs which have been used or suggested for holding the glass in the sash."

Claim 1 of reissue patent No. 23,045 reads: "1. In a window the combination with a sash, glass in the sash, said sash having dove-tailed grooves adjacent the glass at one side thereof, clips holding the glass in the sash, each clip comprising a relatively long leg caught in the dove-tail groove, a resilient loop interposed between the sash and the edge of the glass, and a relatively short leg engaging the face of the glass, and putty keyed in the dove-tailed grooves, covering and concealing the clips, and engaging the glass."

Claim 7 of patent No. 2,078,808 reads: "7. In a window, in combination, a muntin bar of T form, the cross of the T forming pane seats and the stem of the T having short divergent flanges at opposite sides thereof which point toward the pane seats and define retaining notches or grooves and means interlocked with the retaining notches for holding the panes in place."

The word "muntin", as used in the patent, means the cross bars which separate and hold the panes of glass in a window sash.

The court found that the accused device does not infringe reissue patent No. 23,045 because it does not have the dovetail groove in the sash rail nor the resilient loop in the clip stressed by plaintiff; and that it does not infringe patent No. 2,077,808 for

the same reason and for the further reason because the "short divergent flanges at opposite sides thereof (of the T in the muntin) which point toward the pane seats and define retaining notches or grooves" are not present.

The court further found that claim 1 of No. 23,045 and claim 7 of No. 2,077,808 are invalid for want of invention over the prior art, citing Kinnear patent No. 1,073,-805 (1913), Kane patents No. 1,023,938 (1912), No. 1,000,413 and No. 1,000,147 (1911).

■ Unless clearly erroneous these findings are binding upon this court. Rule 52 (a), Rules of Civil Procedure, 28 U.S.C.A. In Great Atlantic & Pacific Tea Co. v. Super Market Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, the Supreme Court say: "The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans."

■ We have carefully compared plaintiff's patents with the accused devices and with the cited prior art patents, and we agree with the findings and conclusions of the trial court. We can perceive no invention in either.

Suit was brought on claims 11, 17, 21, 22, 29, 30, 32, and 33 of patent No. 2,084,355 (1937) charging infringement by defendants' structures A-200 and A-500. The patent relates to means of weather proofing windows of the sliding sash type. The court held all of these claims invalid and that none of them have been infringed. In its brief plaintiff says: "Since claims 29, 32 and 33 will give plaintiff sufficient protection against infringement by defendants, plaintiff will not argue infringement of claims 11, 17, 21, 22 or 30 but only that the District Court was in error in holding them invalid." It follows that the judgment of non-infringment as to these claims must be affirmed, and that the issue of infringement only as to claims 29, 32 and 33 of this patent need be considered.

In respect of infringement the trial court found that these eight claims fall into five groups, the first group including claim 11; the second, claim 17; the third, claims 21 and 22; the fourth, claims 29 and 30; and the fifth, claims 32 and 33.

Nearly all the patents and claims involved in this suit relate to weatherstrips and their mounting. The function of the weatherstrip is to close or seal the joints of the moving parts of metal windows to prevent the infiltration of air and water. Numerous designs and devices have been used for this purpose. The prior art discloses many methods of sealing the junctions between the sashes and between the ashes and the jambs and between the sashes and the headers and the sills.

Claim 29 of this patent describes the weatherstrip claimed to be infringed by defendants in their windows A-200 and A-500. It reads: "29. In a window of the double hung type, in combination, a sash, means forming a channel for receiving the sash, comprising a stop bead, a longitudinally flexible metal sealing member having a substantially flat face for engaging the sash, said sealing member being housed in the stop bead and having its sash engaging face terminating in a freely flexible edge and means adjacent to the base of said stop bead forming a shoulder to cover and guard said edge."

The court found that the accused weatherstrips differ in material and substantial respects from claim 29. They do not have a "longitudinally flexible metal sealing member having a substantially flat face for engaging the sash." Neither are they "housed in the stop bead." They also lack "means adjacent to the base of said stop bead forming a shoulder to cover and guard said edge." The two weatherstrips bear no resemblance to each other "in form, means of mounting, or manner of functioning."

■ It is the rule that "In determining whether an accused device * * * infringes the claim of a patent, resort must primarily be had to the words of the claim." Willis v. Town, 8 Cir., 182 F.2d 892, 893. In McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762, 766, this court quoted with approval the test of infringe-

ment as stated in Electric Protection Co. v. American Bank Protection Co., 8 Cir., 184 F. 916, 923, as follows: "To sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained." Applying these principles to claim 29 and the accused device there is no infringement. See, also, Chester-Pollard Amusement Co. v. Popular Games, 8 Cir., 34 F.2d 409.

Claims 32 and 33 of patent No. 2,084,355 read:

"32. In a double hung window, in combination, a frame, upper and lower sashes slidably mounted in the frame and each having a meeting rail, a sealing extension on the meeting rail of the upper sash having an upwardly extending lip or flange spaced inward from the rail, a sealing extension on the meeting rail of the lower sash having a downwardly extending lip or flange spaced outward from the rail, the lip of the lower sash being disposed to engage the outer face of the lip of the upper sash when the window is closed, and a sealing member housed in the extension of the upper sash rail and disposed to engage the flange of the extension of the lower sash rail when the window is closed and to have its edge covered and guarded by the flange of the extension of the upper sash rail when the window is open.

"33. In a double hung window, in combination, a frame, upper and lower sashes slidably mounted in the frame and each having a meeting rail, a sealing extension on the meeting rail of the upper sash having an upwardly extending lip or flange spaced inward from the rail, and a sealing extension on the meeting rail of the lower sash having a downwardly extending lip or flange spaced outward from the rail, the lip of the lower sash being disposed to engage the outer face of the lip of the upper sash when the window is closed, and a resilient sealing member mounted in the sealing ex-

tension of the upper sash meeting rail and having a tongue portion normally in engagement with the outer face of the lip of said sealing extension but adapted to be wedged away therefrom by the lower sash lip when the window is closed."

The material and functional feature of these two claims is that "the lip of the lower sash being disposed to engage the outer face of the lip of the upper sash when the window is closed." The court found that "Defendants' accused windows are substantially different in operating principles and in form from the structure covered by these two claims." This is abundantly supported by the evidence as well as by an examination of the two devices. It is clear from the evidence, as the court found, that plaintiff's patent is by no means a basic or pioneer patent; and it is well settled that in a crowded art and in a combination patent, the claims are to be limited to the specific language used in the claim. Keystone Driller Co. v. Northwest Engineering Corp., 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747; Shakespeare Co. v. Perrine Mfg. Co., 8 Cir., 91 F.2d 199.

The court also found that all of the claims of this patent in suit are invalid for want of invention and because anticipated by the prior art, citing Sweet's Catalogs of 1926–27, and 1930, the Stein patent No. 1,-688,836 (1928); Dreher's patent No. 1,791,-808 (1931); the Lane patent No. 1,663,134 (1928); the Kleinman patent No. 1,808,043 (1931); the Doering patent No. 1,812,822 (1931); the Brogden patent No. 1,768,740 (1930); and the Polachek patent No. 1,-545,453 (1925).

While no single one of these prior art patents discloses all of the features of plaintiff's patent, we agree with the finding of the court that the claims of patent No. 2,084,355 "are such as any good mechanic could produce when shown the prior art and told the results desired."

Claims 12, 16, 17, 18 and 20 of patent No. 2,084,776 are charged with infringement by defendants' windows A–100, A–200 and A–500. Claim 12 of this patent reads: "12. In a window, in combination, a frame, a sash guided for sliding move-

ment therein, said frame comprising a sill member having an open-sided housing formed therein, and a sealing member housed in the sill member and exposed to contact with the lower inner edge of the sash through the open side of the housing, said sealing member being composed of a resilient sheet metal strip folded into polygonal form and having its longitudinal edges free, and of single ply form, and said housing having a shoulder for covering and guarding the edge of the sash engaging web of the sealing member."

The court set out the following differences between the window described in claim 12 and the defendants' accused structure A–500: The weatherstrips in the two structures are different in shape; defendants' strip has hemmed edges and plaintiff's does not; one edge of the strip is free of the housing in defendants' window while neither edge of the strip is free in plaintiff's window. It is completely enclosed in the housing of the sill. The weatherstrip in the accused structure engages the face of the lower rail of the lower sash, while the weather strip in the patent engages the lower edge of the lower rail of the sash. These arrangements are not equivalent.

The court further called attention to the fact that the file wrapper of the prosecution of the application for claim 12 shows that after repeated rejections of broader claims the plaintiff finally added the closing words of the claim: " * * * and of single ply form, and said housing having a shoulder for covering and guarding the edge of the sash engaging web of the sealing member." These words were added to overcome conflict with the Lane patent 1,815,718 (1931). These elements are not found in the accused window and the court concluded that the defendants' window does not infringe claim 12.

These findings are supported by the evidence, and they are conclusive.

■ Claims 16, 17, 18 and 20 of this patent cover the window frame construction and not the detail of sash and weatherstripping. The court found all of these claims invalid for want of invention and not infringed. Claims 17, 18 and 20 show but slight difference from claim 16, which reads: "16. In a window, the combination with a rigid outer supporting wood frame forming a completely accurately formed rectangular window enclosure and comprising a sub-sill, jambs and a header, of a complete metallic frame built into the wood frame, and a sash slidably mounted in the metallic frame, said metallic frame being composed of sill, jamb and head members all of which are rigid extruded pieces formed of non-corrosive metal."

The parties disagree here, as disclosed by their briefs, as they did in the trial court, as to the proper interpretation of this patent. The plaintiff contends that it covers a combination of a prefabricated window including the combination of an outer rigid wooden frame with an inner complete metallic frame. The defendants contend that the only wooden frame disclosed by the patent is the framing of the window opening in the building structure. They say there is no suggestion in the patent of a wood subframe of any kind. The trial court, after analyzing the patent and studying the proceedings in the patent office, accepted the view of the defendants. The court also considered the oral evidence. In the words " * * * a complete metallic frame built into the wood frame * * *" counsel for the plaintiff emphasize the words "built into" to support their contention, while counsel for the defendants emphasize the proceedings in the patent office and the arguments of counsel for the plaintiff to procure the issuance of the patent including claim 16. In sum these arguments do no more than demonstrate that the situation is sufficiently ambiguous to lend color to both arguments. The claims should be clear and concise. Under the circumstances we must accept the findings of the trial court.

■ We are the more disposed to accept this view because we are forced to accept the court's finding that the patent in any event is invalid. Admittedly the placing of a metal window frame in a wooden frame in buildings is an old art. The trial court cited many illustrations. Carpenters and mechanics have placed

them in buildings many times. The bringing together of old elements in a mechanism involving no new principle, to produce an old result, however skillfully done, even though the result marks an advance in efficiency and utility, is but an exercise of mechanical skill and not invention. Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 486, 55 S. Ct. 455, 79 L.Ed. 1005.

█ Plaintiff next charges that claim 12 of patent No. 2,257,123 is infringed by defendants' A–100 and A–200 windows. The trial court held that the claim is not infringed and is invalid.

Claim 12 reads: "12. A window construction including a sash having upper, lower and side sash stiles, said upper sash stile having an inner upwardly extending flange terminating in an outwardly extending lip and an outer upwardly extending flange of substantially the same height as the inner upwardly extending flange, said outer upwardly extending flange having an inwardly extending lug situated thereon below the upper extremity of said flange and a resilient V-shaped metallic weather strip entrapped therein, one leg of the V lying between said flanges and the other leg of the V held from unlimited movement by said lip."

The court found that claim 12 covers that part of the upper sash top rail, or stile, housing a weatherstrip. The top rail has two legs or flanges of equal length extending upward from the sash. A V-shaped weatherstrip is interposed horizontally between the two legs and entrapped by inward projections—called a "lug" and a "lip" in claim 12—on the flanges. The free end of the weatherstrip is depressed when the sash is raised because the weatherstrip engages with a stationary lip on the header of the frame. When the sash is lowered the weatherstrip rises and engages the projection of the leg and is thus prevented from moving out of the channel between the legs. It thus effectively closes the channel, preventing any foreign matter from getting inside of the weatherstrip. The weatherstrip thus automatically adjusts itself to the sash and header as the sash is raised and lowered.

The court further found that this construction provides a three-point seal.

The accused windows have upper sash rails with two projecting legs of unequal length, one with a short horizontal projection inward forming a channel which entraps the weatherstrip. The weatherstrip has a hump on its upper portion or free leg designed to engage the header of the window frame.

The court further found that the accused windows cannot present a three-point contact with the header when the sash is up but only a two-point, one of the weatherstrip with the header and the other of one leg of the upper sash rail with the header. Thus the differences in length between the two legs of the sash rail of the accused windows represents a substantial and material variation in a window sash, and the legs or flanges are not "of substantially the same height" as required by claim 12.

The plaintiff contends that the court erred in limiting claim 12 to a construction wherein the two flanges of the upper rail are of equal height so that they, with the weatherstrip, form a three-point contact with the header when the sash is closed.

It is true that claim 12 uses the term "substantially the same height" in referring to the height of the two flanges. In referring to the construction in the specifications the patent reads: "The ends of the flanges 75 and 77 are adapted to contact with the member 21 at each side of the bead 73 so that a three-point seal is provided." In Figure 1 of the drawing the member 21 is shown to be parallel to the top rail of the sash. The flanges to make such contact and produce a three-point contact must be equal in length or "substantially" so, otherwise the virtue of a three-point contact would not be attained. It is true claim 12 does not mention a three-point contact, but the construction under claim 12 and the accused windows differs in the way pointed out by the court. They differ also in the location of the lugs on the projecting flanges and in the shape of the weatherstrip. In such a crowded field as here these differences avoid infringement.

■ The court also held that plaintiff's patent is invalid for want of invention over the prior art citing Renton patent No. 1,-599,286 (1926) and Montgomery patent No. 2,189,960 (1940) each of which shows practically the same construction and performs the same function. The court did not err.

■ Finally the plaintiff charges that the defendants' window A–100 infringes claims 1 and 5 of patent No. 2,304,063. These claims are directed to the combination of a window jamb, the vertical side rails of the sash and the weatherstripping between the sash and the jamb. The court describes its features briefly as follows: "This patent shows a window jamb in which, besides the stop bead at one side of the jamb channel and the parting bead on the other, the patented structure has an intermediate rib which is embraced by two free edges of the triangular weatherstrip carried by the window sash vertical rails. The third rib in the jamb channel is called a 'sash guiding rib' throughout the patent and specifically in the two claims here in suit."

The court then found that "the accused structure, Defendants' A–100 window does not have any 'sash guiding ribs', or any weatherstrip engaging those ribs as is demanded by the patent claims, and there is, therefore, no infringement."

The accused window has a weatherstrip the legs of which are bent around the edges of the flanges of the sash rail and lie between the sash rail and the jamb instead of embracing a third guide rib. Plaintiff says in its brief that "The question that is before this Court is whether or not plaintiff's claim 5 is entitled to a construction sufficiently broad to encompass defendants' structure * * *." We agree with the trial court that it is not entitled to such a broad construction. We find no resemblance between the two structures either as to the combination of parts or as to the way they function.

■ The court further found that if the claims be given the broad interpretation which plaintiff asserts for them, they are invalid because they show no invention over the prior art, citing the Hamilton patent No. 1,732,470 (1929) and the Renton patent No. 1,599,286 (1926) and others.

■ While we are compelled to hold so many of the patents in this suit invalid, we realize that "It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly; * * *." Pope Manufacturing Co. v. Gormully, 144 U.S. 224, 234, 12 S.Ct. 632, 636, 36 L.Ed. 414. "It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention." Great A. & P. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 150, 71 S.Ct. 127, 129. The object and the purpose of the patent law is "To promote the Progress of Science and useful Arts * * *." Constitution, Art. I, § 8, cl. 8. Unless a device meets this standard neither the Congress nor the Courts should give or protect an exclusive right to its uses. The plaintiff's patented devices in suit do not meet the Constitutional standard, unless it be in patent No. 2,473,298, upon the validity of which the trial court did not pass. With this exception all the patents in suit are invalid for want of invention.

In each of the complaints in the two cases consolidated for trial and submitted together here the plaintiff charges that the defendants had conspired to infringe plaintiff's patents and to engage in unfair business practices. The complaints are each in a single count, and compensatory damages are demanded in both cases, and in one that such damages be increased in an amount "not to exceed three times the actual amount thereof." The court found, however, that the record does not contain any evidence to sustain the charges of unfair competition, unfair trade practices or conspiracy, and that the testimony of the defendants and their officers and representatives is uncontradicted. Plaintiff has not argued these findings in its brief and has cited no authorities to support such charges. We shall not, therefore, consider them.

But one judgment was entered dismissing each case for want of equity, and it is

Affirmed.