Julius A. STEFFAN and Dolores H. Williams, Appellants,

v.

LEN A. MAUNE COMPANY, a corporation, Jeffrey H. Priesmeyer, and Kewanee Manufacturing Company, a corporation, Appellees.

No. 15445.

United States Court of Appeals
Eighth Circuit.

June 19, 1956.

Philip B. Polster, St. Louis, Mo., for appellants.

Thomas F. McWilliams, Chicago, Ill., (Mann, Brown & McWilliams, Chicago, Ill., and Raymond F. McNally, Jr., St. Louis, Mo., were with him on the brief), for appellees.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment dismissing the plaintiffs' (appellants') complaint in an action brought by them against the defendants (appellees), charging infringement of two United States Letters Patent for inventions in metal door jambs or door frames made by Joseph J. Steffan, deceased. The first of these patents is No. 2,538,925 issued to Joseph J. Steffan January 23, 1951, upon an application filed February 13, 1948. The second patent is No. 2,661,084 issued to plaintiffs December 1, 1953, after the death of Joseph J. Steffan, upon an application filed by him on August 8, 1949.

The defendants in their answer admitted the issuance of the patents in suit, but denied infringement and asserted that the patents were invalid for want of invention.

The parties stipulated that the plaintiffs' claim of infringement was based upon Claim 2[1] of the first patent (No. 2,538,925) and upon Claim 4[2] of the sec-

1. "2. In an attachment for a door jamb having a firm inner jamb section provided with an outer face to receive and support the door hinges, a relatively weak non-supporting outer jamb section to embrace said firm inner section and form a trim for the jamb without forming a support for the door, said weak outer jamb section comprising a thin sheet metal channel having a web to match an edge of the door, one side of said web being extended outwardly to form a door stop, a pair of oppositely inclined side trim members diverging from opposite sides of said web to embrace said firm inner jamb section, the side trim member opposite said door stop being provided with hinge-receiving slots at its junction with said web to provide for insertion and concealment of door hinge members between the inner face of said web and the outer face of said firm inner jamb section, said web having holes adjacent to said slots for the reception of screws to anchor the door hinges to the outer face of said firm inner jamb section, the concealed hinge members being attached directly to and supported by said firm inner jamb section, said inclined side trim members being exposed at opposite sides of said inner jamb section and provided with inturned anchoring margins having lateral extensions to confine and secure the side trim members, each of said anchoring margins being approximately L-shaped in cross section to form an inturned recess for a portion of a wall and a terminal anchoring flange at the inner side of said inturned recess for attachment to said firm inner jamb section, said recess having an abutment face at an acute angle to said terminal anchoring flange, and said web, door stop and side trim members with their anchoring margins being continuous integral parts of said thin sheet metal channel."

2. "4. An adjustable casing, having simulated miter joints, mounted on a fixed frame, comprising sheet metal head and jamb sections each having a web and a pair of divergently inclined side trim members extending along opposite edges of said web, the pair of side trim members of said jamb sections being provided at one end of said section with beveled end edges to form simulated miter joints and to define a recess between said end edges conforming approximately to the contour of the web and side trim members of said head section said head section being seated at a distance from its ends within said recess in each of said jamb sections and said beveled edges being exposed to ap-

ond patent (No. 2,661,084). They also stipulated that defendant Kewanee Manufacturing Company was, at the time this action was commenced, making and selling the metal door frames upon which the claims of infringement were based, and that defendants Len A. Maune Company and Priesmeyer were selling such frames. Jurisdiction was based on 35 U.S.C. § 281 and 28 U.S.C. § 1338.

The issues were tried to the District Court. That court determined that Claim 2 of the first patent in suit was not infringed, because slots for the insertion and concealment of the door hinges were made an element of the patented combination and the defendants' accused door frames did not have slots but had recesses which did not conceal the hinges of the door. The court also determined that Claim 4 of the second patent in suit was invalid for want of invention. A judgment of dismissal was therefore entered from which the plaintiffs have appealed.

The plaintiffs assert that, in finding that Claim 2 of the first patent in suit was not infringed, the court improperly applied the doctrine of file wrapper estoppel and also the doctrine of equivalents, and that the finding was clearly erroneous.

An examination of the File Wrapper and Contents relating to the first patent in suit clearly shows that Steffan had entered a very old and highly developed art. His application was filed in February, 1948. All of his three claims were rejected by the Examiner on August 13, 1948, as unpatentable over the prior art. The claims were amended February 12, 1949, and on August 20, 1949, a fourth claim was added. On December 23, 1949, all four claims were rejected as unpatentable. On June 19, 1950, further amendments to the claims were made, accompanied by "Remarks." Among the remarks, we quote the following:

"Broad Idea Not Anticipated

pear as miter joints at junctions of the side trim members of the head and jamb sections, each of said sheet metal head

"While the claims are limited to specific arrangements of details, none of the references actually discloses the outstanding values of applicant's fundamental concept, involving the broad idea of deliberately combining a *strong inner* jamb section with a *weak outer* jamb section, and attaching concealed hinge members directly to outer faces [of] the *strong* inner jamb section, so that the heavy overhanging weight of the door will be supported entirely by the *strong* inner jamb section."

On September 20, 1950, the Examiner allowed Claims 2 and 3 of the application, and rejected Claims 1 and 4. In response to this action, Steffan cancelled Claim 1 and amended Claim 4. On October 12, 1950, the Examiner gave "Notice of Allowance" of three claims which became Claims 1, 2 and 3 of the first patent in suit.

The File Wrapper demonstrates that Steffan had great difficulty in securing the allowance of any claims. Throughout the pendency of his application in the Patent Office, he laid stress upon the means he had provided for attaching a door to the "firm inner jamb section" (the vertical stud adjacent to the side section of his metal frame). He also laid stress upon the provision for slots in the side section of his metal frame for the inserting and concealing of the door hinges. Rather obviously, what he taught was that a light metal frame could be used as a door casing if the door was hinged to the firm inner frame side member or stud, and that hinges could be inserted through slots in the outer metal frame side member and screwed to the firm inner frame through holes provided for that purpose in the outer metal side member.

Whether the doctrine of file wrapper estoppel was technically applicable to Claim 2 or not, the statements in the File Wrapper and in the patent as to

and jamb sections being mounted on said frame independently of one another."

the novelty and utility of the slots for bringing about the concealment of the door hinges and the fastening of them to the firm inner jamb side member place the plaintiffs in no position to contend that the provision for slots was a non-essential element in the patented combination, or that the hinge-receiving recess of the defendants' metal door frame which does not conceal the door hinges and is merely an obvious means of enabling the door to be hung upon the firm inner door frame side member is the equivalent of the hinge-receiving slot of Steffan.

In view of the crowded state of the prior art as it is disclosed in the record and the File Wrapper, the range of equivalents, if any, available to Steffan would, in our opinion, be so narrow as to be virtually nonexistent. See and compare, Moon-Hopkins Billing Mach. Co. v. Dalton Adding Mach. Co., 8 Cir., 236 F. 936, 938; Shakespeare Co. v. Perrine Manufacturing Co., 8 Cir., 91 F.2d 199, 203, and General Bronze Corporation v. Cupples Products Corporation, 8 Cir., 189 F.2d 154, 159.

■ With respect to Claim 4 of the second patent in suit, that claim covers "An adjustable [door] casing, having simulated miter joints." Obviously, a metal door casing or door frame, in order to fit door openings and doors of varying sizes, would have to be adjustable. Either an inner door frame must be constructed to fit the outer door frame or casing or the casing must be adjustable so that it can be fitted to the door opening and the door. Adjustability of door frames was old in the art long prior to Steffan, and, in our opinion, involved mechanical skill rather than patentable invention.

Steffan's method for providing simulated miter joints where the metal header met the metal side members of the frame was merely an old mechanical expedient well known to those skilled in the art, as the defendants' evidence clearly demonstrated.

We are satisfied that there was nothing disclosed in Claim 4 of the second patent in suit which rose to the dignity of invention or above the level of the mechanical skill of those familiar with the prior art.

The findings and conclusions of the District Court which are challenged by the plaintiffs were not erroneous.

The judgment appealed from is affirmed.