Julius A. STEFFAN and Dolores H. Williams, Executors of the Estate of Joseph J. Steffan, Appellants,

v.

WEBER HEATING AND SHEET METAL COMPANY, Joseph Weber, and John R. McLain, Appellees.

No. 15551.

United States Court of Appeals
Eighth Circuit.

Oct. 29, 1956.

———◆———

Philip B. Polster, St. Louis, Mo., for appellants.

Ralph W. Kalish, St. Louis, Mo., for appellees.

Before WOODROUGH, VOGEL, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from a judgment dismissing plaintiffs' complaint in an action charging defendants infringed United States Letters Patent issued plaintiffs for a keeper mechanism. While other patent infringements were charged in the complaint, it was stipulated that for the purposes of the present case plaintiffs rely only upon Claims 1 and 2 [1] of Patent No. 2,678,843. The defense to the complaint is that the patent relied upon by the plaintiffs is invalid for want of invention. Jurisdiction is based upon 35 U.S.C. § 281, and 28 U.S.C. § 1338.

1. 1. A keeper mechanism adapted for use on a hollow sheet metal door jamb having a latch-receiving opening and bolt-receiving openings above and below said latch-receiving opening, said keeper mechanism comprising U-shaped nut members having inner and outer arms slidably embracing walls of the jamb defining the upper and lower edges of said latch-receiving opening, the inner arm of each nut member having screw thread-engaging means positioned to register with one of said bolt-receiving openings in the jamb, a keeper plate overlying the outer arms of said nut members, and bolts passing through said keeper plate and through the bolt-receiving openings in the jamb and screwed into the screw thread-engag-

The record discloses that the application for patent here relied upon was filed on May 22, 1950, and that letters patent issued May 18, 1954. Included in the record are the patent application, drawings of the keeper mechanism, and the file wrapper. Defendants offered Patent Office records as to patents issued for various keeper devices, including adjustable devices designed for metal frames. They also introduced numerous Tinnerman patents upon spring fasteners. No oral testimony upon behalf of either party is incorporated in the printed record.

The question of whether any improvement involves merely mechanical skill or inventive genius is ordinarily a question of fact, and the findings of the trial court upon such issue shall not be set aside unless clearly erroneous. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 93 L.Ed. 672; Trico Products Corp. v. Delman Corp., 8 Cir., 180 F.2d 529, 530. A question of law may be involved where the trial court has applied an improper standard of invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 95 L.Ed. 162. Here, however, we are not confronted with such a situation.

Plaintiffs cite 35 U.S.C. § 282, which provides:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

The fact that a patent has been granted should be given serious consideration.

However, it is clear that the presumption of validity of a patent is a rebuttable presumption. When substantial evidence is introduced attacking the validity of a patent, the question of patentability is for the Court. Continental Farm Equipment Co. v. Love Tractor, 8 Cir., 199 F.2d 202, 204; Robinson v. Digaetano, 5 Cir., 212 F.2d 1, 4; United States Air Conditioning Corp. v. Governair Corp., 10 Cir., 216 F.2d 430, 432.

We now look to the record to determine whether the trial court's decision to the effect that the Steffan patent is invalid for want of invention is clearly erroneous. The keeper mechanism here involved is designed to be mounted upon a metal door jamb which has a latch-receiving opening and screw-bolt-receiving holes for attaching the device. The keeper mechanism consists of a standard keeper plate, a separate dust box, two screw-bolts, and two U-shaped nuts with a long arm with a screw thread-engaging opening. The keeper plate is adjustable laterally to enable proper latching of the door. The adjustment is made possible by elongated openings in the backing plate or jamb in alignment with the screw holes in the keeper plate. The dust box, in addition to serving its usual purpose, is designed to hold the U-shaped nuts in position. The U-shaped nuts used are one of the many Tinnerman-patented spring clips or fasteners. Plaintiffs in their reply brief state: "In commercial practice, Plaintiffs get from the Tinnerman Products Co. a particular U-shaped nut, which, used on the 22-gauge sheet metal of the Steffan jamb, will slide transversely." They then state that if the metal were

ing means of the inner arms of said nut members to secure the keeper plate to the jamb, the bolt-receiving openings in the jamb being large with respect to the diameter of the bolts extending therethrough whereby lateral adjustment of the keeper plate is permitted.

2. A keeper mechanism adapted for use on a hollow sheet metal door jamb having a latch-receiving opening and bolt-receiving openings above and below said latch-receiving openings, said keeper mechanism comprising U-shaped nut members having inner and outer arms slidably embrac-

ing walls of the jamb defining the upper and lower edges of said latch-receiving opening, a keeper plate overlying the outer arms of said nut members, bolts passing through said keeper plate and through the bolt-receiving openings in the jamb and screwed into the inner arms of said nut members to secure the keeper plate to the jamb, and a latch-receiving box positioned within the latch-receiving opening of said jamb between the U-shaped nut members and proportioned to retain said nut members in embracing engagement with the jamb.

heavier, the nut would have to be spread apart to make it slide satisfactorily.

From our examination of the prior patents disclosed by the record, it appears to us that all of the elements used in the Steffan keeper are old. The adjustable keeper plate is shown to have been used in a number of prior patents. Elongated screw holes permitting lateral movement were known to the art. Dust boxes are an old device. The U-shaped nuts used are those patented by Tinnerman. Tinnerman's patents indicate that one of the prime purposes of his fastening structures is to furnish a nut for use in blind locations where the nut can not be held in place.

The Steffan keeper mechanism appears to be a simple and useful device. Its principal virtue is that it can be readily installed, adjusted, and removed. This result was accomplished by the use of the Tinnerman clip fastener in the manner in which it was designed to be used. The use of the Tinnerman U-shaped nut or fastener accomplished no unusual or unforeseen result when used to attach the keeper mechanism to the door jamb. It would appear to us that the desirability of using a Tinnerman fastener under the circumstances here disclosed should be obvious to a skilled mechanic.

Claim 2 makes an additional contention that the dust box keeps the nut members in position. The dust box contention does not appear in Claim 1. It would appear from Claim 1 and from the evidence in the record that the desired result of holding the nut in place in a blind location can be accomplished by the Tinnerman nut without the aid of the dust box to hold the nut in position. The fastener is clipped on to the metal and thus held in place.

The trial court found that all of the elements of the keeper mechanism were known in the art, and further found:

"The combination in a keeper mechanism of U-shaped nuts, bolts, a keeper plate, a dust box, and a metal door jamb having a latch-receiving opening and bolt-receiving openings constitutes the addition of well-known elements, and prescribes no change in the respective functions of any of such elements."

Upon the basis of the foregoing finding the court found the claims here involved are invalid for want of invention over the prior art.

Plaintiffs apparently attach some significance to the fact that in the foregoing finding the word "combination" rather than "aggregation" was used. The Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 151, 71 S.Ct. at page 129, states that the word "combination" is sometimes used to show presence of invention, and that the word "aggregation" is sometimes employed to show absence of invention. The Court notes that the words in ordinary speech are nearly synonyms, and states:

"* * * However useful as words of art to denote in short form that an assembly of units has failed or has met the examination for invention, their employment as tests to determine invention results in nothing but confusion. The concept of invention is inherently elusive when applied to combination of old elements. This, together with the imprecision of our language, have counselled courts and text writers to be cautious in affirmative definitions of rules on the subject."

We are satisfied that the trial court in its findings used the word "combination" as being the equivalent of the word "aggregation," and that its decision is based upon its conclusion that the combination or aggregation of elements would not bring the end-product into the field of invention. The Supreme Court in the Great Atlantic & Pacific Tea Co. case, supra, considered and discussed the indicia of invention the court should seek in a case where nothing tangible is new, and invention, if it exists at all, is accomplished by bringing old elements together. Among other things, the Court states, 340 U.S. at pages 151, 152–153, 71 S.Ct. at page 130:

" * * * 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but *this is not a usual result of uniting elements old in mechanics.* * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. * * * " (Emphasis supplied.)

■ The Constitution, Article I, Section 8, authorizes Congress to reward inventive genius by providing for the issuance of patents, but does not authorize the issuance of patents for mechanical skill alone. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58. This court has applied high standards for determining whether improvements of practical value involve invention or mechanical skill. Steffan v. Len A. Maune Co., 8 Cir., 234 F.2d 750; Continental Farm Equipment Co. v. Love Tractor, supra; Trico Prod-

ucts Corp. v. Delman Corp., supra; Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497; Buchanan v. Wyeth Hardware & Mfg. Co., 8 Cir., 47 F.2d 704.

■ Plaintiffs contend that the Patent Act of 1952, and particularly 35 U.S.C. § 103, has liberalized the test of invention to be applied. See Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530. The effect, if any, of section 103 upon standards to be applied in determining validity of patents has not been passed upon by the Supreme Court.

We are satisfied that the Steffan device has not met the more liberal standards announced in the Bausch & Lomb Optical Co. case, supra. Consequently, it is unnecessary to consider whether in fact the standards of invention have been liberalized.

The appellants have failed to demonstrate that the judgment of the trial court is clearly erroneous.

The judgment appealed from is affirmed.