362 F.2d 529
 AUTOMATED BUILDING COMPONENTS, INC., a Florida corporation, Plaintiff-Appellant,
v.
STRUCTOMATIC, INC., an Illinois corporation, Defendant-Appellee,
STRUCTOMATIC, INC., an Illinois corporation, Defendant-Cross-Appellant,
v.
AUTOMATED BUILDING COMPONENTS, INC., a Florida corporation, Plaintiff-Cross-Appellee.
 No. 15215.
 No. 15216.
 United States Court of Appeals Seventh Circuit.
 June 27, 1966.
 
 Robert E. LeBlanc, Washington, D. C., Alfred B. Teton, Chicago, Ill., Henry Shur, LeBlanc & Shur, Washington, D. C., Froelich, Grossman, Teton & Tabin, Chicago, Ill., for Automated Building.
 Sidney Wallenstein, Charles Spangenberg, Chicago, Ill., for Structomatic.
 Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Automated Building Components, Inc., a Florida corporation, plaintiff, appeals from an order of the district court holding claims 1, 3 and 4 of United States Letters Patent No. 2,877,520, invalid and dismissing its complaint, and Structomatic, Inc., an Illinois corporation, defendant, cross-appeals from the said order which also dismissed defendant's counterclaim.
 
 
 2
 Said No. 2,877,520 is known as the Jureit patent. Plaintiff's counsel with great zeal trace over a period of 1400 years before the birth of Christ the course of man's knowledge of extracting iron from ore, and the ultimate making of nails to hold buildings together, pointing out that the nail is still the standard fastener for building construction and also that it was, until the Jureit invention, the standard means for securing structural butt joints in roof trusses and the like. Plaintiff's counsel argue that the Jureit joint was the first practical structural butt joint which could be formed completely without nailing, so that, for the first time, entire roof trusses could be formed, with the joint of the invention, in 20 seconds, in a highly automated pressing operation literally beautiful in its simplicity.
 
 
 3
 From this they move on to the conclusion that surely such an accomplishment is the very essence of patentable invention. Of course, they rely on the presumption that the patent in suit is valid.
 
 
 4
 Counsel for plaintiff therefore are emphatic in stating that the district court's conclusion that the patented combination would have been obvious to a person of ordinary skill in the art is based entirely upon the court's subjective reaction and hindsight appraisal and is overwhelmingly contradicted by the court's own findings and by evidence establishing all of the classic criteria of patentable invention.
 
 
 5
 While the Jureit patent has been involved in prior litigation, no case has been decided where its patent validity has been upheld.
 
 
 6
 1. Prior to Jureit, in the art it was known that connectors having nails made unitary or integral with the connector plate could be used for making wooden butt joints and for fastening together wooden members as in joints for trusses, boxes, frames, and wherever two wooden members were to be fastened together. Thus such connectors were known to the prior art where the nails unitary with the connector plate were made by welding said nails to that plate (Berthaud, French No. 929,932), or by striking said nails from the body of the connector plate (Vogel, No. 705,626, Kalischer, British No. 20,400, and Cary No. 546,839), or by the equivalent of striking the nails from the edges or ends of the connector plate (Kalischer, supra, and Frey, No. 2,117,308).
 
 
 7
 Thus such a connector plate was employed in Jureit to complete the wooden joints without using additional nails, bolts or glue, and the connector itself with its unitary or integral nails served to hold the wooden members together to form a joint. This was old in the art, prior to Jureit, and was specifically found in Sanford No. 2,827,676, which provided connectors for making wooden butt joints as in trusses in which teeth triangularly-shaped were struck from the body of the connector plate, and, in connection with separate stitching or positioning nails, held the connector plates in position on opposite sides of the joint temporarily, prior to pressing said plates into the wooden members to form the joint.
 
 
 8
 Amplifying the reasoning gained from the prior art, is the ever-ready test of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, at 152, 71 S.Ct. 127, at 130, 95 L. Ed. 162 (1950), where, the court said:
 
 
 9
 "* * * The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *
 
 
 10
 * * * * * *
 
 
 11
 "* * * The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly.
 
 
 12
 "* * * To bring these devices together and apply them to save the time of customer and checker was a good idea, but scores of progressive ideas in business are not patentable, and we conclude on the findings below that this one was not." We need not protract this opinion with further citation of authorities. The district court's findings are supported by substantial evidence and its conclusions of law are correct. The judgment of the district court that claims 1, 3 and 4 of United States Letters Patent No. 2,877,520 are invalid is affirmed.
 
 
 13
 2. The district court made a finding that defendant produced no evidence to show that it might be damaged by any of plaintiff's alleged illegal conduct in violation of the antitrust laws. We have examined the evidence in the record and the nature thereof bearing upon the antitrust law violation charged against plaintiff. The evaluation of the evidence which is partly written convinces us that we are proscribed by rule 52(a)[1] from disturbing the court's finding. For that reason we must agree that defendant did not introduce evidence of damages under its counterclaim sufficient to make out a case.
 
 
 14
 For all of these reasons the order from which these appeals were taken is affirmed.
 
 
 15
 Order affirmed.
 
 
 
 Notes:
 
 
 [1]
 28 U.S.C.A. Rule 52(a)