**The FOUNDRY EQUIPMENT COMPANY, a corporation, Plaintiff,**

**v.**

**The CARL–MAYER CORPORATION, a corporation, and Carl F. Mayer, Defendants (two cases).**

**Nos. 26951, 26952.**

United States District Court, N. D. Ohio, E. D.

Jan. 24, 1955.

See also D.C., 11 F.R.D. 108; Id., D.C., 11 F.R.D. 302.

John F. Oberlin, Lawrence C. Spieth, Cleveland, Ohio, for plaintiff.

Verne L. Oldham and Wm. C. McCoy, Cleveland, Ohio, for defendants.

FREED, District Judge.

These two suits which were tried together involve the validity and infringement of two patents.  The Barnett and Steindorf Patent No. 1,934,904 was assigned to the plaintiff the Foundry Equipment Company.  The Mayer Patent No. 2,257,180 was issued to the defendant Carl Mayer and licensed by him to the defendant the Carl-Mayer Corporation.  Both patents relate to a vertical core oven.

Civil Action No. 26951 was instituted by the Foundry Equipment Company against the Carl-Mayer Corporation and Carl Mayer, individually, under the Declaratory Judgments Act, 28 U.S.C.A. § 400 * and alleges a controversy between the parties in that the defendants insist that the ovens manufactured by plaintiff infringe on the Mayer patent. The plaintiff seeks a judgment decreeing that the ovens manufactured by it do not infringe the Mayer patent and that the Mayer patent is invalid and void when viewed in the light of the Barnett patent. The answer denies that the Mayer patent is invalid and by way of a cross-complaint asserts that the core ovens manufactured by the plaintiff infringe the Mayer patent. In Civil Action No. 26952 the plaintiff asserts that the Barnett patent is valid and that the ovens manufactured by the defendants infringe the patent. The defendants deny infringement and attack the validity of the Barnett patent. In Civil Action No. 26951 the Foundry Equipment Company asserts an additional ground of invalidity. It claims that the Mayer patent is void because of certain misrepresentations made by Mayer to the Patent Office when he applied for his patent.

The issue of misrepresentation will be considered at the outset. During application proceedings all the Mayer claims pertinent to these trials were rejected as met by Baker Patent No. 2,110,352 filed February 1, 1937 and issued March 8, 1939. To overcome these disclosures of the Baker patent, Mayer was permitted to show under the Patent Office rules, that he had completed his invention prior to Baker's filing date. To make this showing Mayer submitted a drawing to the Patent Office. The evidence disclosed that there was some inconsistency in respect of the date on which the drawing was completed.

The plaintiff has admitted that the inconsistencies were not the result of any fraudulent intent on the part of Mayer. It also has conceded that had the correct date appeared on the drawing, which date predated the Baker filing by at least five months, the Patent Office would have been warranted in issuing the patent. In the absence of a showing of misrepresentation or fraud the argument must be rejected. Cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250.

Stress has been laid on the fact that the drawing shows the heating unit to be located outside the oven proper. Since there has been no showing that the location of the heating unit plays a consequential part of the overall oven, the argument may be summarily dismissed.

While the claims essential to both the establishment of the validity of the patents in suit and whether there is infringement are quite narrow, a general description of both the patents will facilitate understanding their relation to the whole apparatus.

To repeat, the general subject matter of both patents is a vertical oven constructed basically to be used by foundries in their core-making process. The fundamental structural make-up of the ovens disclosed by both the Barnett and Mayer patents is identical. Both ovens comprise a tower-like structure with sidings of suitable insulating material. A continuous chain conveyor carries trays up one side of the oven and down the other. The lower part of the superstructure of the oven extends below the level of the floor. The pit below the floor level contains a guide which takes up the slack in the chain conveyor and also serves as a cooling zone for the trays or work holders. From the level of the floor and extending about six feet upwards is an open area not encased by the insulated superstructure siding. The purpose of the unenclosed area is to serve as a work zone for the employees who place unbaked cores on the up-bound side and remove the baked cores from the down-bound side.

The heating unit is placed on suitable frames in the area between the up-bound and down-bound sections of the conveyor

* Now 28 U.S.C.A. §§ 2201, 2202.

inside the oven casing just above the open or work area. There is a suitable stack located near the top of the ovens. This is the point at which the patents diverge. And this is the diversion which plaintiff claims as the invention.

### The Barnett Patent.

Claim 2 of the patent,[1] includes a heating and air-circulating means. More specifically, it includes a diffusion chamber, a combustion chamber and a means for extracting heat from outgoing work and returning that extracted heat to the heating unit.

The heating unit is comprised of the combustion chamber and diffusion chamber which surrounds it. The heat passes through a perforated roof in the combustion chamber and into the diffusion chamber. The heat then passes through another perforated roof in the diffusion chamber and into the heated zone of the oven. A vertical wall supplied with damper gates extends above the heating unit for a short distance. The purpose of this wall and the gates therein is to regulate the intensity of the heat as it is applied to the cores on their up-bound journey. The damper gates are so constructed that an operator can regulate them from outside the oven. A second vertical wall extends upward from the side of the heating chamber adjacent to the down-bound cores. The function served by this solid wall is to shield the baked cores from the heat as they approach the unloading zone.

The means for extracting the heat from the outgoing work and returning that heat to the oven comprises a blower mounted outside the oven casing just above the work area on the down-bound side. The blower is attached to a "Y" duct, one branch providing an enclosed path to a flue beneath the combustion chamber and the other branch providing an enclosed path to the exhaust stack at the top of the oven. An integral part of this blower is a suction nozzel which is connected over several apertures in the oven casing. The arrangement of the blower serves three purposes. As previously noted, the air blown into the "Y" duct takes two paths. The function served by that portion of the air which is blown up to the exhaust stack is to provide a partial vacuum in the exhaust stack and thus obviate the necessity of a tall chimney. That portion of the air which is blown into the flue beneath the heating unit passes out and around the side walls of the combustion chamber and mixes in the diffusion chamber with the products of combustion. This tends to maintain and complete combustion. The question must necessarily arise as to where the air supply for this "Y" duct originates. It is here that the suction feature of the blower operates. The open construction of the oven at the work area permits free access to the air from the room. The suction draws air up this path past the cores as they are down-bound and into the blower. The air from the room which, of course, is much cooler than the air found in the oven, circulating in this manner, serves to cool the cores before they reach the unloading zone. As a natural consequence of this operation the air, after it has passed the down-bound cores, becomes hotter or is preheated so to speak. It is this air that is then blown through the "Y" duct. In short, the suction operation not only cools the cores before they reach the unloading zone but preheats the air which is circulated to the heating unit. The obvious purpose of this latter use is to provide for more efficient and economical operation of the heating unit.

It is the Court's view that the invention of the Barnett patent can be set

1. In a vertical conveyer oven comprising a casing having a conveyer therein adapted for continuous movement up one side and down the other, heating and air-circulating means applied to said conveyer, including as a source of heat a diffusion chamber within the casing, a combustion chamber within the diffusion chamber, means for extracting heat from outgoing work and returning the same to the oven by a current of air to maintain combustion and to oxidize the work.

forth in two phrases of Claim 2: *heating and air-circulating means applied to said conveyer, [and] means for extracting heat from outgoing work and returning the same to the oven by a current of air to maintain combustion and to oxidize the work.*

■ The most lucid and comprehensive test of the validity of combination patents was delineated by Mr. Justice Jackson in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, on page 152, 71 S.Ct. 127, on page 130, 95 L.Ed. 162, he said:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

He further commented in the opinion:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

■ In the light of this clearly defined measure of combination patents the Court is bound to reach the conclusion that the Barnett patent is invalid. Because of the marked similarity of both patents involved in these two suits the defendants cannot successfully contend that the Mayer patent is valid and the Barnett patent is invalid. For this reason the defendants' admission that the Barnett patent is valid is of no consequence.

The Barnett patent has added nothing to the "total stock of knowledge." Insulated ovens certainly were known prior to 1936, as were continuous conveyor chains, furnaces and blowers. The resultant function of Barnett's aggregation of these elements, as disclosed by the italicized portions of Claim 2 is not invention. The means for applying heat to the conveyor is the short wall above the heating chamber which contains dampers to regulate the intensity of the heat applied to the cores. That certainly is not invention. The use of a combination blower and suction fan to cool the baked cores and preheat the air which is circulated to the heating unit is not invention. Because these functions are not integrated, the fact that they appear in the same device does not total invention.

### The Mayer Patent.

The defendants claim that the Mayer invention is directed to a heating and recirculating system for core baking ovens and the combination of elements providing that system. It is to be noted that this is essentially what plaintiff claims for the Barnett patent. Claims 1[2] and 3[3] are the claims relied upon to show invention. The pertinent elements

2. An oven comprising an elongated walled structure enclosing a heated chamber, a housing enclosing a heating chamber situated within said structure in spaced relation to the top, bottom and side walls thereof and hermetically sealed against direct intercommunication with the heated chamber, a fluid distributor and a fluid recovery duct in said heated chamber, a fluid conducting and impelling means for withdrawing fluid from the heating chamber and delivering it to the distributor, fluid conducting means for receiving fluid from the recovery duct and delivering it to the heating chamber, conveyer guide means in the heated chamber, an endless conveyor supported by said guide means and encircling the aforesaid housing, and article supports sustained by the conveyor.

3. An oven comprising an elongated walled structure enclosing a heated chamber, a

644

of Claim 1 are a heating unit hermetically sealed against direct intercommunication with the heated chamber, a fluid distributor, a fluid recovery duct in the heated chamber, a fluid conducting and impelling means for withdrawing fluid from the heating chamber and delivering it to the distributor, and a fluid conducting means for receiving fluid from the recovery duct and delivering it to the heating chamber. Claim 3 adds to Claim 1 a fluid exhaust duct in the heated chamber.

The heating unit in both the Mayer and Barnett apparatus is similarily located. The heat from the Mayer unit is drawn from the furnace through a duct by means of a blower located outside the oven. The heat is then expelled by this same blower through another duct and into the distributor or plenum chamber located inside the oven. The distributor is an enclosed chamber having several openings through which the hot air is supplied to the heated chamber in such zones as are needed for baking the cores.

These openings are spaced all along the side of the distributor which is adjacent to the up-bound cores. They are found, however, only in the upper half of the down-bound side. The lack of these openings in the lower portion of the down-bound side together with a short vertical wall which extends upwardly from the top of the heating unit on the same side shields the baked cores from exposure to heat as they approach the unloading zone.

Mayer also included as an element of his invention a fluid recovery duct within the heated chamber. The recovery duct is located on the down-bound side and

is suitably affixed to the inside wall of the oven's exterior casing. It contains a series of openings and is attached to the heating unit by another duct. The fan which delivers the hot air from the heating unit to the distributor also serves to draw the hot gases from the oven's interior through the openings in the recovery duct and delivers them to the heating chamber.

It will be seen from this discussion that in the Mayer device there is no direct communication between the heating unit and the heated area of the oven, as is found in the Barnett oven. That is to say, the only contact between the heating and heated zones is through a series of intervening ducts.

The Mayer patent also discloses a fluid exhaust duct contained within the heated chamber. The exhaust duct is similar in construction to the recovery duct, but is affixed to the inside wall of the oven's exterior casing on the up-bound side. Attached to the exterior and located near the top of the oven is an exhaust blower which serves to draw air through this exhaust duct and expel it to the atmosphere.

The Court is satisfied that the Barnett device anticipated the Mayer patent.

It is of some interest to note that while Barnett claims a method for cooling baked cores as part of his invention Mayer does not.

The distinguishing features of the two ovens should be noted in detail. The heating unit of Barnett is in direct contact with the heated zone of the oven through the perforated roof in the diffusion chamber. In Mayer, the hot gases from the heating unit do not come into

housing enclosing a heating chamber situated within said structure in spaced relation to the top, bottom and side walls thereof and hermetically sealed against direct intercommunication with the heated chamber, a fluid distributor in the heated chamber, a fluid recovery duct and a fluid exhaust duct also in said heated chamber, a fluid conducting and impelling means for withdrawing fluid from the heating chamber and delivering it to the

distributor, fluid conducting means for receiving fluid from the recovery duct and delivering it to the heating chamber, conveyor guide means, in the heated chamber, an endless conveyor supported by said guide means and encircling the aforesaid housing, and article supports sustained by the conveyor, opposed walls of the structure having, respectively, a loading opening and an unloading opening in the vicinity of said housing.

direct contact with the heated zone, but pass through both a series of ducts and a distributor before the unbaked cores are exposed to them. Whether this feature is anticipated by Barnett is immaterial for the simple reason that such an arrangement does not contain the necessary requisites for invention. The transfer of heat from one place to another by means of ducts does not constitute an invention. It must also be said that assuming Barnett is valid such a simple divergence by Mayer could not avert infringement. It must logically follow then that there is anticipation.

Consideration should be given to the plenum chamber or distributor claimed by Mayer as an element of his invention. It is true that there is no enclosed chamber in the Barnett apparatus. It will be remembered that the Barnett method of heat application was through a dampered wall immediately above the heating unit. It is obvious that Barnett recognized the desirability of shielding the cores from a direct blast of heat from the heating unit. The means for attaining this end are relatively simple—provide a shield between the cores and the direct heat. Both patents so provide. Because Mayer uses an enclosed chamber with numerous openings instead of a single wall with dampered openings does not significantly distinguish the two devices. Both devices provide somewhat similar means for shielding the cores from direct contact with the hot gases as they leave the furnace. The dampered wall of Barnett thus anticipated the Mayer distributor. As was true in Barnett, this process for shielding the cores used by Mayer is the product of mechanical skill and does not become an invention. On this score then, there is both anticipation by Barnett and invalidity for lack of invention.

It is true that while there is no fluid recovery duct found in the Barnett device, a recovery duct is found in the Mayer apparatus. The purpose of this recovery duct in Mayer and the means employed to return the "used" heat to the heating unit is to provide a preheated air supply for the heating unit and thereby cause the heating unit to function more efficiently and economically. The preheating function is also found in the Barnett apparatus. The method used by Barnett is to draw fresh air from the oven's exterior and cause it to be transmitted in a path past the cores on their down-bound journey, thus picking up a portion of the heat absorbed by the cores as they were being baked. In both Barnett and Mayer we have some hot air being delivered to the heating unit. As can readily be seen the means provided for reaching this result are not the same in both devices. The end result is the same. To say that by attaching a duct to a wall and causing a vacuum in that duct to draw heat into the heating chamber, Mayer has achieved invention, would stretch the concept of invention beyond all recognizable limits. The result was anticipated by Barnett and the means are not invention. Thus, this feature of Mayer was anticipated by Barnett. Even if this were not so, still, as was true in Barnett, it must fail for want of invention.

The only remaining feature to be discussed is the exhaust duct located within the heated zone of the Mayer apparatus and the blower suitable for creating a vacuum in that duct. The purpose of the exhaust duct is clear. It is to provide for continuous circulation of heat so that there will be little temperature variation within the oven, to draw heat up and away from the bottom of the oven where the employees are stationed and to prevent the accumulation of combustible gas pockets. It cannot be maintained that the Barnett oven does not provide for the same results. On the side and near the top of the Barnett oven are found several apertures. These apertures are connected to dampered ducts which lead to a stack. Going back to the "Y" duct previously discussed, it will be remembered that the top branch of this "Y" duct extends up to and inside of the exhaust stack. The blower sends air out this branch. The force

of the air creates a partial suction in the exhaust stack and thus draws air from the oven's interior just as the blower in the Mayer apparatus. The purpose of these elements in the Barnett oven is the same as those served by the exhaust duct in the Mayer oven except that the Barnett exhaust device does not, to any appreciable extent, tend to draw heat away from the working areas. (It should be noted that the Barnett oven provides other means, not relevant here, for preventing the expulsion of heat to the work area.) It can hardly be contended that Barnett does not contain an exhaust and that this exhaust helps to maintain circulation within the oven. Surely then, by merely extending a duct down the inside of the oven Mayer does not defeat anticipation and it is equally clear that this duct is not invention, for such a construction most certainly cannot be relied upon as new and novel.

From all that has been said above in comparing the two patents there can be no doubt but that Barnett anticipates Mayer in each separate element as well as in combination. It is also true that the Mayer oven lacks the inventive genius required for a patentable device. This is particularly true when viewed in the light of the admission that the Barnett patent is valid. If defendants admit the validity of a prior art patent and the Court determines that the prior art patent is invalid for lack of invention, it must follow that the accused device is also unpatentable for the same reason if the Court further determines that the cited prior art patent anticipated the accused device.

For the foregoing reasons the Court is of the opinion that Barnett Patent No. 1,934,904 is invalid for want of invention, and that Mayer Patent No. 2,257,180 is invalid because it was anticipated by prior art and because it lacks the essential qualities of inventive genius.

Judgments will be rendered accordingly.