Morris CORNICK, d/b/a Piece Control Tag Company, Plaintiff,

v.

STRY-LENKOFF COMPANY, a Kentucky corporation, and Lee Lenkoff, individually, Defendants.

Civ. A. No. 2794.

United States District Court W. D. Kentucky, at Louisville.

Aug. 19, 1955.

S. L. Greenebaum, Greenebaum, Barnett & Carroll, Louisville, Ky., Silverman & Mullin, Chicago, Ill., for plaintiff.

Wilbur Fields, Louisville, Ky., for defendants.

SHELBOURNE, Chief Judge.

Plaintiff Morris Cornick, a resident of Chicago, Illinois, instituted this action June 18, 1954, against the defendants Stry-Lenkoff Company, a Kentucky corporation and Lee Lenkoff, its president, invoking the jurisdiction of the Court under the patent laws, Title 35 of the U. S.Code, and under Title 28, § 1338(b), alleging diversity of citizenship and a controversy involving an amount in excess of $3,000, exclusive of interest and costs.

Plaintiff alleged ownership of the entire right, title, and interest to United States Design Letters Patent D–171,441 issued to the plaintiff February 9, 1954, on a device described as a "Tag Dispensing Device."

It was alleged that the patented dispensing device was a part of a system devised by the plaintiff for controlling garments in a cleaning plant, the device being intended to hold the tags within easy reach of a clerk and to be useful in connection with marking garments with tags sold and both tags and dispenser claimed by the plaintiff as the "Cornick Piece Control System."

Plaintiff alleged that the defendant corporation was owned and controlled by the individual defendant Lee Lenkoff, the latter being the alter ego of the corporation; that the defendants were engaged in the business of manufacturing and selling specialties to the cleaning, dyeing and laundry trades, and among other things were engaged in selling tags for processing and handling garments through cleaning plants, but that prior to the time of the acts complained of in this proceeding, the defendants had not sold tags having the format of plaintiff's tags.

It was alleged that the defendant Lee Lenkoff, with knowledge that the plaintiff was not equipped to manufacture the various parts of the Cornick device and tag dispensing system, came to the plaintiff and offered to manufacture plaintiff's tags and that as a result of negotiations between plaintiff and defendant, Lenkoff, there was an agreement that any and all information disclosed by the plaintiff to Lenkoff relating to sales methods, sources of supply, business, pricing and profits concerning the system and the various parts thereof, would be kept in strict confidence by Lenkoff and that relying upon said agreement, plaintiff disclosed information, knowledge and data relative to sales, markets, manner of promotion, sources of supply, etc.; that in violation of that agreement and confidential relationship with the plaintiff, Lenkoff promptly entered into the business of manufacturing and offering for sale various parts and apparatus of plaintiff's piece control system in competition with the plaintiff and that by reason of the deceptive similarity of the format of defendants' tags, to that of plaintiff, the public had been confused, deceived and misled into believing that the tags and equipment offered by the defendant were the plaintiff's system and apparatus, all to plaintiff's great loss.

It was alleged that the defendant Lenkoff had made false, disparaging and derogatory statements in sales literature and advertisements concerning plaintiff's system and thereby had diverted trade from plaintiff to defendants.

The prayer of the petition was for an injunction, both temporary and perma-

nent, for an accounting to ascertain the damages sustained by plaintiff and the alleged gains and profits which had inured to the defendant and for an order directing defendants to deliver up to plaintiff all tags and tag dispensing devices for destruction and for attorneys fees and costs.

In Count 11 of the complaint, it was alleged that the defendants were engaged in the sale of a tag dispensing device, known as the "Nowaste", which was a substantial duplication of the plaintiff's patented dispenser, with all the ornamental features of the design of plaintiff's patented dispenser and were thereby infringing plaintiff's patent.

On the second count, plaintiffs pray for a preliminary and final injunction and that the Court order an accounting for profits and damages and that defendants be found guilty of aggravated infringement and that the Court award treble damages in favor of plaintiff and for costs, including attorneys fees.

On Count 111 of the complaint, it is alleged that the plaintiff's action was an informer action under Title 35 U.S.C. § 292. That section is as follows—

"(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, or sold by him, the name or any imitation of the name of the patentee, the patent number, or the words 'patent,' 'patentee,' or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made or sold by or with the consent of the patentee; or

"Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public; or

"Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—

"Shall be fined not more than $500 for every such offense.

"(b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."

Plaintiff alleges that the defendants placed or caused to be placed on marketing tags the notation "PTD U.S.A." with the intent and purpose of deceiving the purchasing public into believing that the tags had been patented, when as a matter of fact, they had not and the defendant well knew they had not been patented and that no patent application had been filed for the "Nowaste" tag.

Plaintiff prayed here that the Court fine defendants individually and severally under the provisions of Title 35 U.S.C. § 292, supra, and enjoin further false marking and award to plaintiff one-half of the total fine assessed and that the remaining one-half be awarded to the United States.

Defendant's answer and counterclaim, as finally amended, denied that Lee Lenkoff was the owner of or controlled the defendant corporation; denied that the tags sold by the defendants were or were intended to be imitations of plaintiff's tags, but alleged that the plaintiff's tags were imitations of defendants' and other competitors' tags, which were on the market when plaintiff began to use marking tags; denied that Lenkoff made or violated any agreement with the plaintiff by which he obtained information or knowledge of plaintiff's business or of the so-called "Piece Control Tag System", and alleged that in placing upon defendants' "Nowaste" tags the letters "PTD U.S.A." there was any intent or purpose to state or imply anything except the tags were printed in the United States of America, a requirement on shipments to some foreign countries.

All the allegations of the complaint with respect to the validity of plaintiff's alleged patent were denied.

Defendants, in their counterclaim, alleged that the plaintiff, with the "unlawful intent and purpose to damage the corporate defendant in the sale of 'No-waste' marketing tags" had inserted in advertisements in trade magazines, false and misleading statements designed to induce readers of the trade magazines to believe that the alleged patent D–171,-441 applied to and included plaintiff's tags; that the plaintiff had made threats of prosecution to the defendants' customers should they buy or use defendants' tags and that it had placed upon its tag dispenser a false statement to the effect that a patent had been granted upon the Cornick dispensing system, which included the tags as well as the dispenser, all with the purpose of damaging the defendants in their lawful, proper and rightful competition with the plaintiff.

The defendants ask that plaintiff be fined for violation of Section 292 of Title 35 U.S.C., supra, one-half of which the defendants sought, the remaining one-half to be paid to the United States, and asked that plaintiff's alleged design patent be adjudged void.

The case was tried to the Court March 23, and 24, 1955.

From the evidence heard and the many exhibits introduced by the parties, the Court makes the following—

### Findings of Fact

1. Plaintiff Morris Cornick is a resident of Chicago, Illinois, and at all times pertaining to this action, was engaged in business under the trade name "Piece Control Tag Company", with his principal place of business at 3160 Broadway, Chicago, Illinois.

2. Plaintiff was engaged in cleaning and dyeing and early in 1948 began the use of various printed tags, which were attached to the component parts of a customer's order by means of which the garments could be followed and re-assembled with a minimum of inconvenience and trouble. The system was itself incapable of being patented and plaintiff had no right to prohibit others from using a tag system like or similar to that employed by the plaintiff.

3. The use of tags in routing garments through a cleaning establishment required that tags be printed in sets or strips. If a customer's garment consisted of two pieces, the cards had a large numeral "2" in a block and beneath the block each card contained an indentifying number and there was a control stub kept at the desk, so that the tags necessary for a two-garment order had three parts, the parts being separated by perforated lines and were thereby easily separated in attaching them to the garments.

4. Plaintiff's original patented tag holder had five compartments in its stepladder construction, while the alleged infringing device had eight compartments. The device is constructed of light veneer material, is triangular in shape, the base of the triangle being about ten inches long. The perpendicular of the triangle is approximately seven inches and the hypotenuse approximately 12 inches in length. The hypotenuse is not a straight line, but is rounded near its contact with the base and with the perpendicular. As to plaintiff's device, the term "perpendicular" is an inaccurate statement, as that line which constitutes the back of the device is slightly angled outward from the base to the hypotenuse.

5. Defendants' device, constituting the infringer, is triangular in shape, nine inches at base and seven inches in perpendicular, about 11 inches on the hypotenuse and does not contain rounded corners on the hypotenuse and contains eight separate boxes or partitions for holding the marking tags. There is some similarity in the appearance, but a keen observer would readily see the difference in their design and appearance.

6. Prior to 1948, market tags with numerals were available to the cleaning trade and were available in strips containing one to six separate markers. Plaintiff began using the tag marking

system in his own plant in 1948 and 1949 and obtained tags from the International Tag and Sales Book Company of Chicago.

7. Plaintiff designed and had manufactured a wooden box for holding and from which to dispense the loose tags employed in his marking system at his plant in 1952 and on February 9, 1953, filed application for a design patent for the wooden box tag dispenser. June 5, 1953, the Patent Office rejected the application and on June 23, 1953, he applied for reconsideration, which was granted and on October 26, 1953, the application was again rejected. On January 18, 1954, he filed an amendment to his application and February 9, 1954, the design patent D–171,441 was issued for a fourteen year term.

8. One of the claims in plaintiff's application was "I have invented a new, original and ornamental design for a tag dispensing device * * *."

9. Stry-Lenkoff Company, a corporation, is organized under the law of Kentucky and has its office and place of business on Market Street in Louisville, Kentucky. Lee Lenkoff is President and the owner of a majority of the capital stock of the corporation.

10. There is no invention, art or ingenuity in plaintiff's patent D–171,441, of stepladder construction and curved corners on the two parallel sides. The arrangement of the compartments for holding cards is old and has long been utilized.

11. Stry-Lenkoff Company as a printer and distributor of marking tags has been in that business prior to the time it made and sold tags to the plaintiff and prior to the time plaintiff began use of tags such as comprise a part of his so-called "Piece Control Tag System." Neither the plaintiff nor the defendant was first in that business.

12. Lee Lenkoff refused to sign a document which was presented to him and which he was requested to sign at the time he was shown through plaintiff's plant in Chicago, and made familiar with plaintiff's so-called "Tag Marking System." On that occasion, no confidential information was disclosed to him which he pledged to keep secret.

13. Plaintiff has suffered no damage from any of the alleged unfair trade practices on the part of the defendant corporation or defendant Lee Lenkoff. Neither the defendant corporation nor Lee Lenkoff used any deceptive method in competing with plaintiff in the sale of tags, except Lenkoff and his corporation, in an effort to deceive the public, had printed upon his tags "PTD U.S.A." This, the Court finds was a deliberate effort on the part of the defendants to imply and create the general impression that the tags were patented in the United States.

15. May 1954, the defendant Stry-Lenkoff Company had constructed and begun to use in the sale of its marking tags for the cleaning industry, a wooden dispenser, for similar function and in general appearance, resembling that of the plaintiff, which dispenser was designed to be used in connection with the loose marking tags like and similar to those used by plaintiff.

16. None of the tags used by the plaintiff in its business and for use in connection with the wooden dispensers were printed within the Western District of Kentucky. All of the marking tags used by defendant in its business of selling marking tags and dispensers were printed within the Western District of Kentucky. Neither tags nor the dispenser manufactured or used by the defendant were the subject of a patent issued or applied for by the defendant. The defendant has suffered no damage from any alleged unfair trade practices of the plaintiff.

From the above findings of fact, the Court makes the following—

### Conclusions of Law

I. The Court has jurisdiction of the parties and the matters in controversy.

II. Plaintiff's patent number D–171,441 is invalid. The test of invention is the same for design as for

mechanical patents. Nat Lewis Purses v. Carole Bags, Inc., 2 Cir., 83 F.2d 475. As the Court pointed out in the Nat Lewis Purses case, the same exceptional talent is required for a design as for a mechanical patent.

A reading of the complaint in this case would indicate confusion, at least in plaintiff's mind, upon this important phase of patent law. He emphasizes the functional and utility features of the tag dispenser as a part of his system. But the claimed patented dispenser is but a triangular shaped box, with separate compartments for holding tags, mounted in stepladder construction for easy access. Where is the inventive genius reflected in this design? It is not there.

In the Acton Manufacturing Co. v. Louisville Tin & Stove Company case, 116 F.Supp. 796, 798, Judge Swinford, a Judge of this Court, considered the validity of a design patent, D-152580, which was for a portable beverage cooler. In that, as well as the case at bar, the patent had been granted upon the idea that the rounded corners of the device merited the award of the patent. The alleged infringement, if the validity of the patent was sustained, was admitted. But Judge Swinford held the patent invalid, holding that the rounded corners on the cooler were no more than the natural development and progressive change in appearance of a long established prior art, and said—

"* * * while the presumption is in favor of the patent courts should be slow to sustain patents that are clearly lacking in novelty of idea, even though through thoughtful workmanship the item has become more attractive and salable. In other words, it must be recognized that workmen and designers who have long experience in the designing and construction of refrigerators and related items should not expect the protection of a patent for shop changes to modern design of long established prior art."

Commenting upon the decision of the Supreme Court in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, Judge Swinford noted the admonition of the Supreme Court that many decisions involving patents in modern days seem to have drifted far beyond the intent of the constitutional patent requirements, and quoted with approval from that case, Mr. Justice Douglas' opinion, in which he said in part that the Patent Office " 'has placed a host of gadgets under the armour of patents—gadgets that obviously have had no place in the constitutional scheme of advancing scientific knowledge.' "

See also Judge Swinford's opinion in Cold Metal Products Co. v. Newport Steel Corp., D.C., 119 F.Supp. 880, and In re Bigelow, 194 F.2d 550, 39 C.C.P.A., Patents, 835.

III. There is no evidence in this case upon which it can be fairly concluded that either the plaintiff or defendant has committed unfair trade practices or unfair competition.

IV. Neither party is entitled to injunctive relief.

V. The corporate defendant falsely marked its marking tags with "PTD U.S.A." and is therefore guilty of the offense set up by Section 292(a) of Title 35 U.S.C., subjecting the offender to a fine of $500, who marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent", "patent applied for", "patent pending", or any word importing that an application for a patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public. The defendant corporation is therefore subject to the fine of $500.

VI. The plaintiff Morris Cornick is equally guilty of the same offense, because in placing upon his tag dispensers "Piece Control Tag & System U. S. Patent No. D-171,441", he was attempting to deceive the public into believing that the marking tags and the dispenser were each and both a part of

a system which was protected by patent No. D–171,441. However, there is no proof that the tags were printed or the dispenser manufactured within the Western District of Kentucky. The Court, therefore, would not have jurisdiction to impose the fine upon plaintiff, notwithstanding the belief of the Court that the evidence fully establishes plaintiff's guilt of the offense. Pentlarge v. Kriby, D.C., 19 F. 501; Hotchkiss v. Samuel Cupples Wooden-Ware Co., D.C., 53 F. 1018.

Conclusion

It is therefore the conclusion of the Court that plaintiff's complaint should be dismissed and that a judgment imposing a fine of $500 on the defendant Stry-Lenkoff Company be imposed, one-half of which is payable to the plaintiff Morris Cornick and the remaining one-half payable to the United States and that the plaintiff Morris Cornick should pay the costs of this action and that the defendants' counterclaim should be dismissed.

A judgment to that effect will be presented by the defendant upon notice to plaintiff, within ten days from the date of this memorandum.