Alvin G. DEWEES, Plaintiff,

v.

George L. WHISENANT, d/b/a Whisenant Cone Company, Defendant.

Civ. A. No. 280.

United States District Court
W. D. North Carolina,
Statesville Division.

June 20, 1956.

Anthony J. Turchetti, Philadelphia, Pa., for plaintiff.

Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., Stanley J. Corne, Newton, N. C., for defendant.

WARLICK, District Judge.

This is a patent case in which infringement is alleged. Defendant denies liability for infringement, alleges that the patent is void for want of invention on its face and further for that the patent in suit is void because of prior public use of the alleged invention, disclosed therein, more than one year prior to October 1, 1940, the date on which the application for the patent was filed. The matter originally came on for hearing on defendant's motion for summary judgment but was heard and is being determined on the actual trial of the matter before the court. The following facts are disclosed by the evidence:

Plaintiff is a citizen of Glenside, Montgomery County, Pennsylvania, and the defendant is a resident of Maiden, Catawba County, North Carolina. Plaintiff is the owner of letters patent, No. 2,322,-350, granted to him by the Patent Office of the United States on June 22, 1943, for a "process for reconditioning yarn cones". The plaintiff and defendant are both engaged in the business of reconditioning cones used for winding and rewinding yarn as is practiced in the textile trade,—plaintiff having a plant in the City of Philadelphia and defendant's plant being located in Maiden, North Carolina.

In the textile industry cones are very extensively and widely used for the purpose of winding and unwinding of yarn. Cones as such are almost invariably made of fiber board and are hollow on the inside. In order to determine the type, character and number of the yarn that is wound on the cone, the textile industry ordinarily follows a fixed scheme of attaching a label by means of an adhesive substance to the portion of the interior wall of the cone, which label contains all necessary information relating to the substance wound thereon. After the yarn has been spun onto the cone and removed therefrom by the user, the cone then is ready for reconditioning and this primarily involves the removal of the label from the inside of the cone so that it may be used again for either the same or another type of yarn. This service is that which both plaintiff and defendant perform. The used cones are ac-

quired from various textile mills, many by direct purchase, but the greater bulk thereof by the service performed by both plaintiff and defendant in their plants on request of the textile mills, and after the label has been removed from the interior of said cone, the cone is thereupon either sold or a direct charge is made for the service performed to the cone. The sole work done by either plaintiff or defendant is the removal of the label so that a new one can be affixed and this removal is wholly brought about through the use of steam.

Plaintiff's patent relates entirely to the introduction of steam into the interior of the hollow cone, thereby loosening the adhesive bond by which the label is affixed to the inside of the cone, which obviously facilitates its removal. The patent lays no claim to any particular mechanical apparatus for introducing steam into the interior of the cone but is concerned only with the method of the use of steam. Five claims, numbered one through five, inclusive, are made, and each adds up to the same conclusion. I see little need for incorporating all five, and since the full intent of each is embraced in number four, I select that and set it out in these findings.

"4. A method of removing an adhesively-held label from the interior of a hollow yarn cone which consists in restricting communication of the atmosphere with the interior of said cones, introducing water vapor into and partially confining it within said cone to weaken the adhesive bond of said label, and then manipulating said label to remove the same."

Since steam was first brought into commercial use a hundred years or more ago, it has been used for loosening adhesive bonds of all kinds, and the idea is, to say the least, notoriously old and has been widely used wherever deemed expedient for the purpose of removing stamps, labels, stickers, wallpaper, letter opening, and numerous other ways and means which are hardly necessary for restating. A check of the history of the patent in the Patent Office reveals that the plaintiff, as patentee, was fully aware of a widespread use of steam for loosening such adhesive bonds and others as is set out.

When application for this patent was filed on October 1, 1940, the evidence heard in this case established that the method as claimed in the patent was and had been in public use for a considerable time in excess of one year prior to the date of the filing of the application. This evidence which came from the testimony heard by the Court indicated such a prior public use and was of such a nature as to amount to a statutory bar to its patentability; the evidence indicated that as early as 1937 steam as generated in various methods and applied in any number of ways and means, was successfully used in removing labels adhesively attached to cones used in the textile trade. Evidently this evidence is credible and is so received by the Court for it seems in no wise to have been disputed. This testimony revealed that one William Stone of Rossville, Georgia had successfully developed means in several various ways for introducing steam into the interior of hollow yarn cones and thereupon reconditioning them to the extent that the labels adhesively attached were easily susceptible of removal and that he had successfully practiced the art and had acquired quite a business through such means, beginning as early as 1937. From his evidence and that of his attorney and some three or more workers engaged in his several places of work, there can be little if any question but that he had brought about a commercial success from the work done and had gradually effected many changes in his methods,—improving in each instance on his former means of creating steam as needed and effecting mechanical ways of convenience and speed.

In addition thereto Stone, sensing that he had brought into being a good idea and one which would make for less work and more speed, employed an attorney, practicing in the State of Georgia, and

made an independent and honest effort to secure a patent on the method of introducing steam through the several means he employed, but that he was not successful for that a reputable patent attorney located in Washington, D. C. advised him that there was not sufficient possibility of obtaining a patent to warrant the filing of an application,—for that it lacked inventive genius and added nothing to that not already known and used when needed.

Considering that it is the "standard of invention" that controls where the validity of a patent is in issue, as here, I can see no purpose in going further in this case than to say, as I find, that there is no patentability in this matter as granted by the Patent Office. It is wholly covered by the decision in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. The same standard of inventive genius applies to method patents as well as to mechanical and other patents. Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200. It being a matter of common knowledge that steam is a well-known expedient for loosening adhesive bonds and that its use amounts to nothing more than the mechanical skill of the calling to utilize this well-known means for removing labels and other substances, from not only hollow cones but from other devices, and since there is nothing novel in the use of steam for that purpose, it would therefore appear that its use, which is old, for the removing of labels from the interior of hollow cones, which is likewise old, does not rise to the dignity of invention and is not therefore a patentable method. For that reason the patent is invalid for want of invention.

I further conclude that the patent, in addition to being void for lack of invention is likewise invalid for the reason that the alleged invention was in public use more than one year prior to October 1, 1940, when the application in this particular instance was filed with the Patent Office.

"A person shall be entitled to a patent unless—* * *

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b).

For the above reasons the defendant is not guilty of infringement and the action is thereupon dismissed.

Counsel will prepare decree.