**SCRIPTO, INC., Plaintiff,**

v.

**FERBER CORPORATION, Defendant.**

Civ. No. 463–56.

United States District Court
D. New Jersey.

June 26, 1958.

McCarter, English & Studer, Newark, N. J., for plaintiff. Ernest P. Rogers, Atlanta, Ga., Warley L. Parrott, Charlotte, N. C., William J. Ormsby, Jr., Atlanta, Ga., of counsel.

Milton Rosenkranz, Jersey City, N. J., for defendant. Maxwell E. Sparrow, New York City, of counsel.

HARTSHORNE, District Judge.

The crux of this case in its patent aspect is whether or not the three patents owned by plaintiff, Scripto, fall within the prior art and are therefore invalid.

In its complaint, Scripto relies upon three patents assigned to it by the patentee, Charles K. Lovejoy, the first a mechanical patent, No. 2,748,748, for a retractable ball point pen, applied for May 25, 1953, issued June 5, 1956; the second a design patent on such pen, No. 171,093, applied for October 19, 1953, issued December 15, 1953; the third a similar design patent No. 176,469, applied for February 8, 1955, issued December 27, 1955. Plaintiff claims these patents have each been infringed by defendant's sale of its "Ferber 49er" ball point pen, though insofar as the above mechanical patent is concerned plaintiff relied only upon Claim 5 of such patent.[1]

---

1. Claim 5 of such patent reads as follows: "In a retractable ball pen having a barrel, a ball point and reservoir unit housed within the barrel for sliding movement therein between retracted and projected positions, a cap removably connected

Scripto accordingly asks the usual injunction against defendant Ferber, an accounting and damages. It also claims that in Ferber's sale of its above pen, defendant has been guilty of unfair trade practices and unfair competition. But these issues have been expressly reserved by the parties for later trial, pending the determination of the patent aspect of the case. Defendant, Ferber, denies the above allegations, and in turn charges plaintiff with having been guilty of unfair trade practices and unfair competition, this latter charge having been similarly reserved for further consideration.

■ Not only is the use of ball point pens widespread in fact among the public, but the records of the Patent Office prove that same is indeed a crowded art.[2] Rather than taking up all of this prior art in detail, it will suffice to consider here simply the two early Hoffman patents, granted in the 1880s, for a mechanical pencil, and the Gruber patent, granted in 1948, for a ball point pen, as previously noted. Surprising as it may seem, apparently not a single one of all the prior art patents set forth in Note 2 had been called to the attention of the Patent Office when it granted Lovejoy's basic mechanical patent, applied for May 25, 1953, granted on June 5, 1956. Such is also the situation as to Lovejoy's first design patent. As to its second design patent, none of this prior art seems to have been previously called to the attention of the Patent Office, save the Fehling patent. Under such circumstances, the presumption of validity of the Lovejoy patents, on which plaintiff relies, arising from their issuance, is small indeed. In truth, the fact that the Patent Office Examiner did not have all this prior art called to his attention may well have had much to do with the issuance of the Lovejoy patents in the first place. Apparently, when passing on these Lovejoy patents basic to Scripto's claims, the Patent Office considered these applications to be somewhat of a new departure, rather than to be, as in fact they were, only slight additions to an already crowded art.

An inspection of all this prior art shows that the major additions to human knowledge which were made by the in-

to said barrel, a plunger and a laterally biased latch housed within said cap for sliding movement therein, with one end of the plunger projecting out of the cap and the opposite end engaging said reservoir for effecting projection of said ball point out of the writing end of the barrel upon depressing said projecting end of said plunger, and means for biasing said plunger and ball point unit into retracted position; the improvement of said plunger being provided with an aperture and adjacent web portion for releasably engaging a portion of said laterally biased spring latch to effect an operative combination of the plunger and latch and said plunger being further provided with a recess for receiving another portion of the spring latch, said latch being carried on said plunger in nesting relationship and the plunger and latch combination being adapted for sliding movement therewith within the cap during projection and retraction, said cap containing a shoulder housing a portion that engages said laterally biased latching member upon projection of said unit and retaining it in projected position un-

til released, and manually operable means extending through said cap and accessible exteriorly thereof for releasing said latching member to effect retraction of said unit, and said shoulder having another portion for engaging said plunger and latch combination upon retraction and stopping the movement thereof in desired retracted position."

2. See Hoffman, No. 270,567, Patent issued Jan. 9, 1883, for a retractable mechanical pencil; Hoffman, No. 365,747, Patent issued June 28, 1887, for a retractable mechanical pencil; Gruber, No. 2,449,-218, Patent issued Sept. 14, 1948, for a ball point pen; Fehling, No. 2,536,923, Patent issued Jan. 2, 1951, for a retractable fountain pen; Frentzel, No. 2,-580,753, Patent issued Jan. 1, 1952, for a ball point fountain pen; Kahn, No. 2,-692,580, Patent issued Oct. 26, 1954, for a writing instrument; Aversa, No. 2,-722,914, application filed May 22, 1953, patent issued Nov. 8, 1955. There are, in addition, certain foreign patents, which, so far as material will be referred to later.

vention of the ball point pen were each and all well known to the public through this prior art before Lovejoy applied for a single one of his patents. Substantially what the ball point pen adds to the fund of human knowledge consists in the use of a ball point for writing, in the use of a semifluid ink to cover this ball point, and in the ability of the ball point pen to project the ball point for writing purposes, but to retract it when not in use. Every single one of these essential characteristics of the ball point pen, as used under the Lovejoy patent by Scripto, and in fact as used by defendant, Ferber, in his "49er", is essentially the same as that shown in one or the other of the patents which comprise this prior art, and more specifically in the above Hoffman and Gruber patents. Just as does Lovejoy, this prior art calls for the use of a ball point, calls for its use with a semifluid ink, calls for the ability, on the one hand, to project the ball point under control for writing, and, on the other hand, to retract it under control when not in use.

Nor is there any substantial difference in principle in the spring which maintains the ball point in the retracted position in these pens, or in the use of a plunger sliding inside of the barrel of the pen, and in the spring latch biased outwardly for control purposes lying within that plunger. As does Lovejoy, and indeed Ferber, these prior art patents disclose a barrel which is shorter in its longitudinal extent than the slidable writing unit, together with its cap, that is held in the barrel, and is adapted to slide in and out through the barrel. All of these writing units are moved longitudinally in the barrel by means of a spring which tends to retract the ball point into the surrounding or protecting barrel when the pen is not in use. Similarly it is true of these patents generally, that there is a means toward the top of the barrel, sometimes in the form of an annular shoulder, sometimes in the form of a pin and slot, or the like, to limit the retracting motion caused by this retraction spring. Further, all these

patents reveal that the plunger has associated with it some form of a latch which is biased laterally along the inside of the barrel. This latch is so biased that when it encounters a suitable latching means, such as a hole or window in the wall of the barrel, it will pop into this window, and latch the unit in a projected position when it is being used for writing. Again these prior patents, as does Scripto and Ferber, reveal some means by which this latch can be released from the above window, whether it be by manual pushing on the extension of the latch spring itself, or by a small button which comes into contact with it, to allow retraction of the writing unit. The retraction is accomplished by the natural tendency of the compression spring to expand in the absence of any counter force, such as is exerted when the latch catches in the window.

Regardless of the rest of such prior art, the two Hoffman patents show these general principles as applied to a mechanical pencil, while the Gruber patent shows them as applied to a ball point pen, Scripto's product. The early Hoffman patent makes use of annular shoulders to limit retraction in the same fashion as does Lovejoy. Similarly, Gruber makes the same use of such annular shoulders, as, for that matter, does Ferber. But both Gruber and Hoffman, and Ferber as well, make use of a window or hole in the barrel, in order to catch the spring latch and so hold the writing unit in projected position. Lovejoy uses its annular shoulder (whether it be continuous or interrupted is immaterial) both to act as such a "stop" in the retracted position of the writing unit, in which case a shoulder in the plunger makes contact with it, and also to maintain the writing unit in projected position, in which case the spring latch makes contact with it. But this minor difference between Lovejoy and the prior art demonstrates no inventiveness, since it simply uses the well-known annular shoulder device for two services instead of one, i. e., it is a mere mechanical variation.

The only really substantial difference between Scripto [Lovejoy] and the prior art, on the one hand, insofar as alleged invention is concerned, or between Scripto and Ferber, on the other hand, insofar as infringement is concerned, lies in the detail of the method of control of the ball point, as it exists in the projected or writing position and in the retracted position. Further, this detail itself involves the use of means well known to every mechanic. Specifically, the above difference in control is as follows[3]:

(1) In the retracted position (a) in the prior art the control is exerted by a shoulder on the plunger, which engages an opposite shoulder formed on the inside of the barrel, (b) in Scripto [Lovejoy] the method is the same, (c) in Ferber the spring latch engages a shoulder on the inside of the barrel.

(2) In the projected or writing position (a) in the prior art the spring latch catches in a hole in the barrel, (b) in Scripto [Lovejoy] the spring latch catches on a shoulder on the inside of the barrel, (c) in Ferber the spring latch catches in the same way as in the prior art.

But whether this control occurs because of the impact of two shoulders, or because of the spring latch engaging a shoulder, or because of a spring latch catching in a hole in the barrel, is a matter of mere mechanical details, the principles of each of which, in fact, were exhibited in the prior art. Further, the minutiae of these differing control methods are all based on such well-known mechanical principles as that opposite projecting surfaces stop on contact, and the fact that a spring, when compressed, tends to expand when the compression is relieved.

Indeed, the only thing which Lovejoy even contends it adds to the art is the so-called "webbed portion", found in the lower end of its plunger. This is simply a slot in the plunger, which serves to anchor the spring latch, so that it may be nested in the plunger groove, and also tends to bias the spring latch laterally. But this lateral biasing of the spring latch was fully disclosed in the prior art, Lovejoy's device merely making use of the ancient principle of leverage, in the form of a cantilever, in supplying this lateral bias. Indeed, even this nesting principle has been used time out of mind in such a common matter as a door latch. So the alleged addition of Lovejoy must have been obvious to a person of ordinary skill in the art.

Thus, since Scripto [Lovejoy] does not even contend that its patent adds anything to the essential characteristics of a ball point pen, and since its sole addition affects a very subordinate part of its mechanism, and by the use of principles which are either actually used in the prior art or are well known to one employed in such art, this patent clearly adds nothing to the fund of human knowledge, and is therefore not patentable. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

We now turn to the two Lovejoy design patents. Here again the crux is largely as to whether these patents are covered by the prior art. The statutory provisions in that regard are as follows:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor  *  *  * The provisions of this title relating to patents for inventions shall apply to patents for designs  *  *  *" 35 U.S.C. § 171.

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been

---

3. It is indeed difficult for mere words to convey to the reader the minute details, which an exhibit of the ball point pens  ·  themselves would make evident to the eye.

obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains * * *" 35 U.S.C. § 103.

The leading case construing these provisions as to a design patent is Palmer Co. v. Luden's, Inc., 3 Cir., 1956, 236 F.2d 496, where the court laid down the rule that:

"The specifications for the granting of a design patent, as set forth in the Act are invention of a new, original and ornamental design, nonobvious to a person of ordinary skill in the art." At page 500.

The design must not only produce "a new and pleasing impression on the aesthetic sense" but "there must be an exercise of the inventive faculty, and if the design lacks this quality, it will not suffice to say that it is new, original and ornamental, and has received wide public acceptance." At page 500.

We turn to the first design patent, No. 171,093, the essence of which is claimed by Scripto to consist of the so-called sloping shoulders at the top of the barrel, with a similar slope on the cap of the plunger. However, these sloping shoulders have been known and used in writing instruments by the public for years. See Furedy Design Patent 82,-821, issued December 16, 1930; Morrison Design Patent 155,532, issued October 11, 1949. Thus the essence of this patent is neither new nor original. With that design well known to the public, what could be more obvious "to a person of ordinary skill in the art" of designing writing instruments, than to apply this same slope to the top of the barrel of the Lovejoy pen?

Of course, the fact that the top of the plunger cap of the Lovejoy pen had to project beyond this sloping barrel, for functional reasons, does not affect the fact that this slope in the barrel was old and well known. Granted, then, that this projection of the cap had to exist, what could be more obvious to the average designer in that field, than to have a slope in the top of the cap at the same angle as the slope in the top of the barrel? Hence this whole matter of the slope in the top of the Lovejoy pen appears to be neither new, nor original, nor nonobvious to a person of ordinary skill in the art. Whether it is ornamental is a matter of artistic taste, as to which one might well say *"de gustibus non disputandum."* But, in any event, even if more ornamental than the straight, flat top, the difference in its aesthetic appearance is so slight that it would not seem to rise to the heights of invention anyway. For instance, it is by no means the equivalent of an ornamental caricature of a rabbit, or other animal, with exaggerated features, as compared with the normal realistic rabbit, or other animal, of natural proportions and postures. Palmer Co. v. Luden's, Inc., supra.

As to the second design patent, this revolves substantially about the question of whether the change in the locale of the release button, from the barrel to the center of the clip, constitutes a patentable design. For similar reasons, this design would not appear patentable. That this changed locale for the release button is not "new" or "original" may be seen by a glance at Bouhier's French Patent, No. 979,112, issued December 6, 1950, whose release button is also located in the clip of its pen. That this change is truly "ornamental" is even less clear than are the sloping shoulders in the first Lovejoy design patent. Of course, the extremely slight changes in the configuration of the button itself, and of the clip itself, are too minute and insubstantial to be called inventive. Thus the two Lovejoy design patents on which Scripto relies are also invalid.

Since the patents on which Scripto relies are invalid, so that it can make no lawful claim of infringement against Ferber, neither this matter of infringement, nor certain other issues raised by the parties, need be detailed.

The facts herein stated and the conclusions of law herein expressed shall be considered the findings of fact and con-

clusions of law required by F.R.C.P. 52, 28 U.S.C.

An order may be entered accordingly, including an application to set down the unfair competition issues for trial.