**LEESONA CORPORATION,**

v.

**Robert Lewis SEIGLE, Defendant.**

**Civ. A. No. 40441.**

United States District Court
E. D. Pennsylvania.

Feb. 6, 1968.

---

Frederick Charles Tecce, Philadelphia, Pa., for Leesona Corp., Fell & Spalding, Philadelphia, Pa., Robert F. Conrad, Washington, D. C., of counsel.

Irving J. Katz, Philadelphia, Pa., for Robert Lewis Seigle.

## SUR MOTION FOR SUMMARY JUDGMENT

KIRKPATRICK, District Judge.

This is a declaratory judgment action to have the defendant's Patent No. 2,916,-185 entitled "Supply Holder" declared invalid and not infringed by the plaintiff's unpatented textile machine marketed under the designation "Uniconer". The defendant has counterclaimed for an injunction permanently restraining the plaintiff from future infringement of its patent, as well as for damages resulting from its past infringement. Depositions, interrogatories and affidavits having been taken, both parties now move for summary judgment.

The defendant's patent relates to a revolvable supply holder for bobbins or spools of yarn and the like in order to deliver the material to winding machines and other textile apparatus. The advantage claimed for it lies in the fact that it permits easy replacement of an exhausted spool without interfering with the feed of yarn from the other spools or bobbins. This continuous feed of yarn makes it unnecessary to stop the machine in order to make changes and so eliminates loss of production time.

The patent contains only one claim which is,

"A supply holder for spools and bobbins of yarn, thread and the like comprising a base, a bobbin holder having a hub rotatably mounted on said base by a pivot pin extending through said hub and said base, a plurality of arms extending radially from said hub, said arms being spaced evenly around said hub, the free ends of said arms being bent away from said base, a separate bobbin mounting pin secured to the free end of each of said arms and projecting from said arms away from said base, each of said bobbin mounting pins being substantially perpendicular to the free end of its respective arm so that the pins project toward a common point which is spaced from said bobbin holder and is on the axis of said pivot pin, each of said bobbin mounting pins having a pair of diametrically opposed longitudinally extending grooves in its surface and a hole extending diametrically through the pin and connecting said grooves, a separate substantially U-shaped metal spring mounted on each of the pins with the bottom of the spring extending through said hole and the arms of said spring extending longitudinally in said grooves, each of the arms of said spring being bent so that the ends of said arms resiliently engage the bottom of the grooves and a portion of said arms proj-

ects radially outwardly from said grooves, a blind hole extending longitudinally into said hub from the bottom surface of said hub, a ball in said hole, a helical spring in said hole and compressed between said ball and the bottom of said hole, said spring urging said ball toward said base, and a plurality of evenly spaced holes in said base beneath said hub and around said pivot pin, said holes in said base being smaller in diameter than said ball and being arranged so that upon rotation of said bobbin holder with respect to said base the ball will selectively snap into said holes and lock the bobbin holder from freely rotating with respect to said base."

The claim covers three major features; namely the overall structure of the supply holder (lines 1–13), a spring mechanism used to hold the spools or bobbins on the bobbin mounting pins (lines 14–24) and a ball and socket mechanism used to prevent free rotation of the supply holder (lines 24–35).

The plaintiff in challenging the validity of the claim relies (1) on its Autoconer winding machine which is a predecessor of both the current Uniconer automatic winding machine and the defendant's patent, (2) Kershaw Patent No. 1,-488,123 Nov. 18, 1920, (3) the rule of law that to claim a number of old elements which in aggregation perform no new function not previously performed in the same way is insufficient to constitute patentability and (4) the obviousness of the invention. In addition to the Kershaw patent relied upon by the plaintiff, the following references are of record in the file wrapper of the defendant's patent.

| Watson | 582,770 | May 18, 1897 |
| Sawtell | 1,260,069 | March 19, 1918 |
| Burman | 1,311,039 | July 22, 1919 |
| Craig | 1,760,347 | May 27, 1930 |

As to the Uniconer's antecedent, Autoconer, the only evidence is an affidavit by the plaintiff's vice-president accompanied by four photographs of the Autoconer as it existed in 1950 and 1951. The affidavit merely swears to the authenticity of each of the photographs. There is no accompanying description of them and without it this court is unable to determine whether the Autoconer anticipated [1] or rendered obvious [2] the defendant's invention.

Coming then to the Kershaw and other prior art patents; from the claims, the specifications and drawings, it is evident that there are a number of unmistakable similarities in both form and function between the structure covered by the claim here at issue and Kershaw's patent. Kershaw provides a base and a revolvable "support" with slightly upturned arms, in substance identical with the defendant's revolvable "supply holder". Both have bobbins or spools mounted on the arms used to supply yarn to winding textile machines. Kershaw's specification is significant in this regard. He says,

"This invention relates to revoluable supports for holding yarn in creels of the kind in which the yarn to be warped or beamed in warping or beaming machines are drawn off cops of yarn or ring frame bobbins or other bodies holding or formed of yarn mounted in groups or series on revoluable supports with the beginning of the thread or yarn of one connected to the end of the thread or yarn from another so that yarn may be drawn off these successively without stoppage of the wraping or beaming and, also without stopping of the warping or beaming, fresh bobbins cops or the like can be applied to take the place of those from which yarn has been drawn off."

While Kershaw in the drawings discloses three peripheral bobbin holders and the defendant discloses four, both parties in their specifications and claims make it clear that their inventions are not limited to any particular number of bobbin holders, the number utilized being dependent on the user's needs.

1. 35 U.S.C. § 102.

2. 35 U.S.C. § 103.

578

In addition, both Kershaw and the defendant's patent disclose a bending of the ends of the arms of their respective support or supply holder away from its base so that the axis of the bobbin holders perpendicular to the ends of the arms, meet at a common point above the collar or hub of their respective support and supply holder.

From the above description as well as a visual comparison of the drawings of Kershaw and the defendant it is clear that the first and main element of the defendant's claim, if not completely anticipated by Kershaw, is old, at least old in the sense that whatever margin of novelty it may exhibit over Kershaw is a variation which would be obvious to one of ordinary skill in the art of textile machinery.

As to the remaining elements of the claim; the plaintiff has not pointed to any prior art to show that they are in fact old or obvious but the references cited by the Examiner in the course of the proceedings to obtain the patent are before the court and are pertinent prior art. The mounting pin spring (lines 14–24 of the defendant's patent) which in the patented structure prevents the bobbins from rotating and being pulled off the bobbin mounting pins as the yarn is being unwound appears in Watson, 582,770. Although in Watson the ends of spring are soldered to the "spindle" or mounting pin while in the present case the spring is passed through a hole in the mounting pin with the ends free to move in the grooves as the spring is compressed or released, this difference is so slight that Watson is very close to an anticipation. The ball and socket type mechanism of the patented device is also old, similar mechanisms appearing in Burman (1,-311,039), and Craig (1,760,347).

Thus, each of the three major features of the defendant's claim taken individually would fall short of patentability and the basic question is whether the defendant's putting together of these old and unpatentable elements produces a patentable combination.

The plaintiff has cited the rule of Patent Law that to claim an assembly of old elements which in aggregation performs no new function not previously performed in the same way is not sufficient to constitute patentability. The law upon the point is well settled and as stated in Great Atlantic & Pacific Co. v. Supermarket Equip. Corp., 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162 (1950) is,

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. * * * A patent for a combination which only unites old elements with no change in their respective functions * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

As stated by this court in Sperry Rand v. Ronson Service, Inc., D.C., 159 F.Supp. 3, 5,

"To constitute invention, it is essential that the elements of a combination must have some new functional relationship, accomplishing a new and not readily anticipated result."

The inventor, whose testimony by deposition is before the Court, testified specifically and emphatically that the detent mechanism of the patent has no functional relationship of any kind with either the bobbin retaining device or the bent up bobbin holder arms and, quite apart from the inventor's opinion so expressed, a study of the specification and drawings makes it plain that not only is the claim for an unpatentable assembly of separate elements but the mechanism claimed would have been obvious at the time the invention was made to a person having ordinary skill in the art of textile machinery. I am not unmindful that summary judgment is a procedural expedient which should be used sparingly in patent litigation. However, where as here no material issue of fact exists and the evidence is not beyond the comprehension of the studious layman, unassisted

by expert testimony, summary judgment is properly utilized.

The court finds the defendant's patent invalid.

The defendant's counterclaim is dismissed.

Judgment accordingly.

Inasmuch as the defendant's patent is found invalid there is no reason to deal with the question of infringement as there would be following a plenary proceeding.